**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 218 Broadway, LLC and Pentalon Construction, Inc.,<br><br>Plaintiffs,<br>v.<br><br>J.P. Morgan Chase Bank, N.A.; Wells Fargo Bank, N.A.; and John Doe Chase Employees #1-#10,<br><br>Defendants. | Case No. 1:25-CV-07386—LJL |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: 212.801.9200

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. PLAINTIFFS FAIL TO STATE ANY PLAUSIBLE CLAIM AGAINST CHASE ..... 5

A. Plaintiffs' Upon Information And Belief Allegations Are Insufficient To State Any Claim ..... 5

B. Plaintiffs' Allegations Are All Insufficient Because The Funds Were Not Deposited Into A Chase Account In Pentalon's Name ..... 7

II. PLAINTIFFS' CLAIM FOR AIDING AND ABETTING FRAUD FAILS AS THE COMPLAINT FAILS TO PLEAD ACTUAL KNOWLEDGE OR SUBSTANTIAL ASSISTANCE ..... 7

A. Plaintiffs Do Not Allege Facts Establishing That Chase Had Actual Knowledge of the Alleged Underlying Fraud ..... 8

B. Plaintiffs Do Not Allege Facts Establishing That Chase Substantially Assisted the Alleged Underlying Fraud ..... 10

III. THE CLAIM FOR AIDING AND ABETTING CONVERSION FAILS FOR THE SAME REASONS AS THE AIDING AND ABETTING FRAUD CLAIM AND BECAUSE PLAINTIFFS CANNOT STATE A PRIMARY VIOLATION FOR CONVERSION ..... 12

IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF UNDER NYUCC § 4-A-207 ..... 14

A. The Declaratory Judgment Claim is Duplicative of the Aiding and Abetting Claims and Should Be Dismissed On That Basis ..... 15

B. There Is No Valid Legal Predicate For a Claim for Declaratory Judgment ..... 16

C. Plaintiffs Cannot Pursue A Claim Against Chase For Purported Violation of NYUCC § 4-A-207 ..... 16

D. NYUCC 4-A-207 Provides The Framework For Processing A Wire Based On Account Number And Chase Complied With Its Duties Under Article 4-A ..... 18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Pages(s)

**CASES**

*Adeia Guides Inc. v. Shaw Cablesystems G.P.*,
No. 23-CV-08796, 2025 WL 2771608 (S.D.N.Y. Sep. 29, 2025)....15

*In re Agape Litigation*,
773 F.Supp.2d 298 (E.D.N.Y.2011)....9

*AJ Energy LLC v. Woori Bank*,
No. 18-CV-3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019), *aff'd*,
829 F. App'x 533 (2d Cir. 2020)....5, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4, 5

*Backus v. U3 Advisors, Inc.*,
No. 16-CV-8990, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017)....13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....4

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)....*passim*

*Berman v. Morgan Keegan & Co.*,
No. 10-CV-5866, 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011), *aff'd*,
455 F. App'x 92 (2d Cir. 2012)....8

*Cain v. Weiss*,
No. 21-CV-4067, 2022 WL 1556410 (E.D.N.Y. 2022)....13

*Chiste v. Hotels.com L.P.*,
756 F.Supp.2d 382 (S.D.N.Y. 2010)....16

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018)....6

*Costoso v. Bank of Am., N.A.*,
74 F. Supp. 3d 558 (E.D.N.Y. 2015)....14

*CVS Albany, LLC v. 1688 Rojav Realty, LLC*,
No. 24-CV-07145, 2025 WL 2614077 (S.D.N.Y. Sep. 10, 2025)....15

*DirecTV Latin America, LLC v. Park 610, LLC*,
691 F.Supp.2d 405 (S.D.N.Y. 2010)....16

*Dragons 516 Ltd. v. GDC 138 E 50 LLC*,
201 A.D.3d 463, 162 N.Y.S.3d 6 (1st Dep't 2022)....13

*EFG Bank AG v. AXA Equitable Life Ins. Co.*,
309 F. Supp. 3d 89 (S.D.N.Y. 2018)....15

*Estevez v. Consol. Bus Transit, Inc.*,
No. 15-CV-8007, 2016 WL 3448627 (S.D.N.Y. June 20, 2016)....6

*Frankel-Ross v. Congregation OHR Hatalmud*,
No. 15-CV-6566, 2016 WL 4939074 (S.D.N.Y. Sept. 12, 2016)....17, 18, 19

*Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union Bancaire Privee*,
160 F.3d 146 (2d Cir. 1998)....14

*In re Generali COVID-19 Travel Ins. Litig.*,
576 F. Supp. 3d 36 (S.D.N.Y. 2021)....16

*Goldberg v. Bank of Am.*,
No. 653303/2019, 2024 WL 4125014 (Sup. Ct. N.Y. Cty. Aug. 27, 2024)....20

*Green Star Energy Sols., LLC v. Edison Props., LLC*,
No. 21-CV-2682, 2022 WL 16540835 (S.D.N.Y. Oct. 28, 2022)....9

*Gutterman v. Herzog*,
No. 20-CV-1081, 2020 WL 6728787 (E.D.N.Y. Nov. 16, 2020)....6

*Heinert v. Bank of Am., N.A.*,
410 F. Supp. 3d 544 (W.D.N.Y. 2019),
*aff'd*, 835 F. App'x 627 (2d Cir. 2020)....9

*Hongying Zhao v. JPMorgan Chase & Co.*,
No. 17-CV-8570, 2019 WL 1173010 (S.D.N.Y. Mar. 13, 2019)....10, 11

*Johnson v. JPMorgan Chase Bank, N.A.*,
488 F.Supp.3d 144 (S.D.N.Y. 2020)....18

*JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*,
710 F. Supp. 3d 259 (S.D.N.Y. 2024)....12

*Liu Yao-Yi v. Wilmington Tr. Co.*,
301 F. Supp. 3d 403 (W.D.N.Y. 2017)....9

*McBride v. KPMG Int'l*,
135 A.D.3d 576 (1st Dep't 2016) ....................11

*McCarthy v. JP Morgan Chase Bank*,
772 F. Supp. 3d 298 (E.D.N.Y. 2025) ....................4

*Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A.*,
750 F. Supp. 3d 1180 (E.D. Cal. 2024)....................18

*Meszaros v. Meszaros*,
No. 18-CV-05731, 2019 WL 13225390 (E.D.N.Y. Sept. 30, 2019) ....................13

*Miceli Contracting Co. et al. v. JPMorgan Chase Bank, N.A.*,
No. 24-CV-05923-JS-AYS (E.D.N.Y. order issued Aug. 19, 2025) (Doc. No. 26)....................4

*Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*,
No. 19-CV-7972, 2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020) ....................6

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
261 F.R.D. 13 (S.D.N.Y. 2009), *aff'd sub nom.* 382 F. App'x 107 (2d Cir. 2010) ....................12

*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols, LLC*,
No. 1:20-CV-02327, 2022 WL 874783 (S.D.N.Y. Mar. 24, 2022)....................6

*Optanix, Inc. v. Alorica Inc.*,
No. 1:20-CV-09660, 2021 WL 2810060 (S.D.N.Y. July 6, 2021)....................16

*R.M. Sander v. Enerco Grp., Inc.*,
No. 21-CV-10684 (VB), 2023 WL 1779691 (S.D.N.Y. Feb. 6, 2023) ....................5

*Renner v. Chase Manhattan Bank*,
No. 98-CV-926, 2000 WL 781081 (S.D.N.Y. June 16, 2000) ....................11

*Rosner v. Bank of China*,
349 F. App'x 637 (2d Cir. 2009) ....................9

*Sofi Classic S.A. de C.V. v. Hurowitz*,
444 F. Supp. 2d 231 (S.D.N.Y. 2006)....................15

*Stancuna v. New Haven Legal Assistance Inc.*,
383 F. App'x 23 (2d Cir. 2010) ....................5

*Steel River Sys., LLC v. Variant Alt. Income Fund*,
No. 24-CV-8676, 2025 WL 2531353 (S.D.N.Y. Sep. 3, 2025)....................15

*In re Synchrony Fin. Secs. Litig.*,
988 F.3d 157 (2d Cir. 2021)....................4

*Targoff v. Wells Fargo Bank, N.A.*,
67 Misc. 3d 504 (N.Y. Sup. Ct., Westchester Cty. 2020)....................19, 20

*Tevdorachvili v. Chase Manhattan Bank*,
103 F. Supp. 2d 632 (E.D.N.Y. 2000)....................14

*Ward v. N.Y.U.*,
No. 99-CV-8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)....................6

*Wellton Int'l Express v. Bank of China (Hong Kong)*,
612 F. Supp. 3d 358 (S.D.N.Y. 2020)....................18

*Weshnak v. Bank of Am., N.A.*,
451 F. App'x 61 (2d Cir. 2012)....................13

*Zamora v. JPMorgan Chase Bank, N.A.*,
No. 14-CV-5344, 2015 WL 4653234 (S.D.N.Y. July 31, 2015), *aff'd sub nom.*
*Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622 (2d Cir. 2020)....................9, 10, 11

**STATUTES**

NYUCC § 1-202(b)....................20

NYUCC § 4-A-207.................... *passim*

NYUCC § 4A-404(1)....................21

**RULES**

Fed. R. Civ. P. 9(b)....................7

Fed. R. Civ. P. 12(b)(6)....................1

Defendant JPMorgan Chase Bank, N.A. ("Chase") submits this memorandum of law in support of its motion (the "Motion") to dismiss the Complaint, with prejudice, under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

218 Broadway, LLC ("Broadway") and Pentalon Construction, Inc. ("Pentalon," and with Broadway, "Plaintiffs") bring this lawsuit against Chase arising out of a purported business email compromise in which Broadway, relying on allegedly fraudulent wire instructions it received by email, authorized and initiated a $637,566.33 wire transfer (the "Wire") from its own external bank account to an account at Chase that Broadway believed to be held by Pentalon. Embedded in Plaintiffs' Complaint is the flawed premise, "upon information and belief," that the Chase account to which Broadway sent the Wire was in fact titled to Pentalon. As this is factually incorrect—as reflected both by the transactional details associated with the Wire and the account opening documents as to this account—Plaintiffs' entire theory of liability as against Chase is implausible. Chase's sole involvement as to the Wire was receiving and processing a payment order that Broadway itself authorized in-person, which directed funds to the precise account number that Broadway provided. Broadway's attempt to shift blame for its own failure to confirm the authenticity of the wire instructions it received—and ensure it was, in fact, sending money to Pentalon—is baseless. Plaintiffs' claims against Chase are implausible and must be dismissed pursuant to prevailing law and the UCC.

With respect to the specific claims that Plaintiffs have asserted against Chase, both of their claims for aiding and abetting fraud and aiding and abetting conversion should be dismissed. The Complaint fails to plead facts establishing that Chase had actual knowledge of any underlying fraudulent or wrongful conduct at the time of the Wire or that Chase provided substantial assistance in furtherance of that conduct. These deficiencies are fatal to both causes of action. Absent

specific factual allegations showing that Chase had ***actual knowledge*** of the alleged fraud or conversion—and affirmatively assisted—the aiding and abetting claims cannot stand. Plaintiffs' generalized references to purported "red flags" and alleged "suspicious activity" do not suffice to plead actual knowledge. As Plaintiffs have not plausibly alleged the required elements of their aiding and abetting causes of action, and because the conduct alleged in the Complaint reflects nothing more than an ordinary banking transaction carried out by Chase in good faith, the aiding and abetting claims should be dismissed with prejudice.

With respect to the aiding and abetting conversion claim specifically, that claim fails for the additional reason Plaintiffs cannot possibly plead the existence of a primary violation, *i.e.*, a claim for conversion. It is well-settled that funds deposited in a bank, such as the funds involved with the Wire, are not sufficiently specific and identifiable from the bank's other funds on deposit to support a conversion claim. This too dooms this claim.

As for Plaintiffs' request for a declaratory judgment tied to New York's Uniform Commercial Code ("NYUCC") § 4-A-207, that claim fares no better. As a threshold issue, the claim for declaratory judgment is duplicative of the underlying aiding and abetting claims and seeks no relief that is not implicitly sought in those causes of action. It should thus be dismissed on that basis alone. Further, there is no valid legal predicate for seeking declaratory relief, which is too a basis for dismissal. Relatedly, Plaintiffs also cannot identify an underlying substantive cause of action for the declaratory judgment claim as required, as a claim under NYUCC § 4-A-207 cannot be pursued against a beneficiary bank associated with a payment order, which was Chase's role here. In any event, NYUCC § 4-A-207 governs the effect of a misdescription of a beneficiary in a funds transfer—specifically, when the name and account number on a payment order do not match. In the circumstances alleged here, Chase was explicitly entitled under § 4-A-

207 to rely solely on the account number provided when processing the Wire. Even more, Plaintiffs have not alleged, and cannot plausibly allege, that Chase had actual knowledge of the alleged discrepancy.

For all of these reasons, and as more fully set forth below, the Complaint should be dismissed with prejudice against Chase, without leave to amend as any amendment would be futile.

## FACTUAL BACKGROUND

In the Complaint, Plaintiffs allege that they were the victims of a business email compromise committed by a third-party. Specifically, Plaintiffs allege that in connection with a real estate project (the "Project"), in December 2023, Broadway requested wire instructions from Pentalon, its general contractor, to remit a milestone payment to Pentalon in the amount of $637,566.33, representing work performed by Pentalon in connection with the Project. Compl. ¶ 23, 28-29. In connection with that payment, Plaintiffs allege that Broadway received an email purportedly from Pentalon's Controller relating to a "legitimate" invoice (the "Invoice") but that also contained fraudulent wire instructions for payment of said Invoice. *Id.* ¶¶ 30-31.

On December 14, 2023, Broadway allegedly initiated the Wire from its bank account at a different bank to pay the Invoice in accordance with the wire instructions received to an account held at Chase ending 0213, that it believed to be in the name of "Pentalon Construction." *Id.* ¶¶ 34-35. Plaintiffs allege they subsequently became aware later that month that the Wire had not been sent by Broadway to Pentalon, but rather, to another third party. *Id.* ¶¶ 40-46.

Despite Plaintiffs' claims to the contrary, the Wire was not deposited into an account in the name of Pentalon at Chase. Rather, the Wire was deposited into a Chase business account ending 0213 in the name of a totally separate non-party, with neither the name Pentalon nor Construction in the account holder's name (the "Chase Account"). *See* Declaration of Sylvia E. Simson dated November 12, 2025 at Ex. A (Signature Card reflecting who the Chase Account is titled to) and

Ex. B (wire details detailing the information relating to the Wire, including its date, amount, the account it came from, and where it went, i.e., to the Chase Account).[1]

Against this backdrop, and despite Chase having no involvement in the Wire or the underlying wire transfer instructions, Plaintiffs bring purported claims for aiding and abetting conversion, aiding and abetting fraud, and for a declaratory judgment as to a purported violation of NYUCC § 4-A-207(c)(2)), and seek reimbursement from Chase for and/or a return of the full amount of the Wire, consequential damages, pre- and post-judgment interest, costs, legal fees, and expenses. *See id.* ¶ 68, ¶ 74, and ¶ 79 (WHEREFORE clauses). Chase denies any purported liability to Plaintiffs.

## **LEGAL STANDARD**

A complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" and be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). It thus must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint offering only "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not plausibly allege

[1] "[A]t the motion to dismiss stage, courts may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) (internal quotation omitted). As the Chase Account is specifically referenced throughout the Complaint, "there is no question that these documents are integral to the complaint." *Miceli Contracting Co. et al. v. JPMorgan Chase Bank, N.A.*, No. 2:24-CV-05923-JS-AYS, (E.D.N.Y. order issued August 19, 2025) (Doc. No. 26) (considering extrinsic evidence submitted by Chase on motion to dismiss and granting motion in its entirety); *see also, e.g., McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 306 (E.D.N.Y. 2025) (finding "integral to the Complaint" documents attached to a "Simson Declaration" including "signature cards . . . Chase's Deposit Account Agreements . . . [and] McCarthy's . . . bank statement," and noting that "the Complaint does not explicitly reference these documents, [but] it makes multiple references to McCarthy's Chase accounts (from which the alleged wire transfers were made) and the wire transfers carried out by virtue of McCarthy's contractual relationship with Chase.").

a claim for relief. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Moreover, "[t]he facts in a complaint must plead a plausible nexus between the actions of the defendant and the alleged harm suffered." *Stancuna v. New Haven Legal Assistance Inc.*, 383 F. App'x 23, 24 (2d Cir. 2010) (dismissal is proper where a "[p]laintiff's complaint, even when read liberally, fails to plead a plausible connection between defendants' alleged actions and plaintiff's loss of business"). The Court "need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by documents upon which [the] pleadings rely." *R.M. Sander v. Enerco Grp., Inc.*, No. 21-CV-10684 (VB), 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023) (internal quotation marks and citation omitted) (dismissing complaint where plaintiff provided irreconcilable dates regarding date of alleged harm, such that granting leave to replead would be futile). Indeed, the Court "is not required to discard its common sense." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (dismissing conversion and other claims against bank where circumstances were "facially implausible").

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE ANY PLAUSIBLE CLAIM AGAINST CHASE

#### A. Plaintiffs' Upon Information And Belief Allegations Are Insufficient To State Any Claim

Throughout the Complaint, the Plaintiffs include unsupported allegations—mostly "upon information and belief" but otherwise pled in conclusory fashion—that Chase somehow violated its own internal policies, procedures, or practices and/or industry standards because the Chase Account was opened, was used by the accountholder, and received the Wire. Compl. ¶¶ 33-34. Similarly, both of Plaintiffs' aiding and abetting claims plead only that "upon information and belief" Chase had actual knowledge of the underlying fraudulent scheme. Compl. ¶¶ 65-68, 71-

74. Each and every single one of these allegations fail to plausibly support any of the claims Plaintiffs purport to now bring against Chase.

As a threshold matter, "[a]llegations premised on 'information and belief' must be supported by specific facts and cannot be accepted at face-value." *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972, 2020 WL 4895675, at *2 (S.D.N.Y. Aug. 19, 2020) (citation omitted). In other words, in the Second Circuit, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (citation omitted). This Court need not and should not countenance such bald allegations. *See New Oriental Enter., PTE, Ltd. v. Mission Critical Sols, LLC*, No. 20-CV-02327, 2022 WL 874783, at *4 (S.D.N.Y. Mar. 24, 2022) ("[T]he Court is not required to accept such conclusory allegations particularly where made merely on information and belief."); *Gutterman v. Herzog*, No. 20-CV-1081, 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020) ("Allegations based on 'information and belief' without more, will not suffice.").

Relatedly (and tellingly), Plaintiffs do not identify which policies, procedure, or practices and/or industry standards Chase allegedly deviated from. As courts in this District have held, allegations that a defendant "violated its own policies and responsibilities towards [claimants,] without identifying any such policies or responsibilities, is too conclusory to state a claim." *Estevez v. Consol. Bus Transit, Inc.*, No. 15-CV-8007, 2016 WL 3448627, at *10 (S.D.N.Y. June 20, 2016) (quotation marks and citation omitted) (dismissing negligence claim); *see also Ward v. N.Y.U.*, No. 99-CV-8733, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000) ("[B]ald assertions and conclusory allegations claiming that . . . rules or procedures were not followed, does not state

a valid claim."). As that is all the Plaintiffs have put forth, their claims are implausible against Chase.

### B. Plaintiffs' Allegations Are All Insufficient Because The Funds Were Not Deposited Into A Chase Account In Pentalon's Name

The Complaint fails to state a plausible claim for relief against Chase because it rests on factual allegations that are demonstrably incorrect. The factual predicate for Plaintiffs' claims arises from a misguided belief that Chase permitted a fraudster to open a fraudulent account in Pentalon's name. *See, e.g.,* Compl. ¶¶ 33(i), 50. However, Plaintiffs' theory is utterly implausible as Chase's records confirm that the Wire was deposited into a Chase account maintained by another third party with a name not resembling Pentalon's in the slightest. *See* Simson Decl. Exs. A-B. In short, the allegations in the Complaint that Chase allegedly permitted the Chase Account ending in 0213 to be opened and then used in Pentalon's name, and then received the Wire, cannot be reconciled with Chase's own records confirming who the holder of the Chase Account really is. And because the Complaint's central factual assertion is incorrect, Plaintiffs have not pled a story that holds together and simply cannot satisfy the *Iqbal/Twombly* standard.

## II. PLAINTIFFS' CLAIM FOR AIDING AND ABETTING FRAUD FAILS AS THE COMPLAINT FAILS TO PLEAD ACTUAL KNOWLEDGE OR SUBSTANTIAL ASSISTANCE

"To establish liability for aiding and abetting fraud, the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 411 (S.D.N.Y. 2021) (internal quotations omitted) (dismissing claim for aiding and abetting fraud). Further, claims alleging aiding and abetting premised on fraud must be pled with particularity under Rule 9(b). *See id* at 412. ("Rule 9(b) requires that the pleadings give rise to a strong inference of fraudulent intent, which may be inferred either from motive or

from recklessness on the part of the defendant."). Plaintiffs have not sufficiently pled all of these requirements and certainly not with the requisite level of particularity.

### A. Plaintiffs Do Not Allege Facts Establishing That Chase Had Actual Knowledge Of The Alleged Underlying Fraud

Assuming *arguendo* that Plaintiffs sufficiently plead a claim for fraud against the primary defendants (which Chase does not concede), Plaintiffs have still failed to state a cause of action for aiding and abetting fraud against Chase. To begin with, there is extensive precedent articulating the high standard that a plaintiff must meet to allege actual knowledge when an individual is suing a bank for the alleged misdeeds of its customers. It is well-established that "actual knowledge" of the underlying fraud is required under New York law for an aiding and abetting claim, and "mere allegations of constructive knowledge or recklessness are insufficient." *Berman v. Morgan Keegan & Co.,* No. 10-CV-5866, 2011 WL 1002683, at *10, 13 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012), and *aff'd*, 455 F. App'x 92 (2d Cir. 2012) (dismissing aiding and abetting fraud and conversion claims, and finding that "[b]ecause plaintiffs failed to plead facts with the requisite particularity to support their claim that [defendant] had actual knowledge of the underlying fraud, their aiding and abetting fraud claim is dismissed"). Importantly, "[a]llegations that the defendant "should have known of the conduct are insufficient to raise an inference of actual knowledge, as are allegations of a bank's negligent failure to identify warning signs of fraudulent activity, ... even where such signs converge to form a veritable forest of red flags." *Berdeaux,* 561 F. Supp. 3d at 412 (dismissing claim for aiding and abetting fraud) (internal quotations and citations omitted).

Here, Plaintiffs fail to allege any specific allegations of Chase's purported knowledge of the underlying fraud at the time of the Wire. The Complaint does not even contain a conclusory assertion that Chase knew of the alleged fraud (nor could it), let alone provide the factual support

necessary to establish that Chase had actual knowledge of the fraud at the time. All Plaintiffs allege is that "upon information and belief" Chase had actual knowledge. This is woefully insufficient. *See supra* at Argument I.A; *see, e.g., Green Star Energy Sols., LLC v. Edison Props., LLC*, No. 21-CV-2682, 2022 WL 16540835 at *15 (S.D.N.Y. Oct. 28, 2022) ("Plaintiff provides no factual support beyond its 'information and belief.' And "conclusory" allegations of knowledge cannot support a claim for aiding and abetting fraud.").

Plaintiffs further allege that Chase purportedly "willfully disregarded red flags" that "would indicate an intent to commit fraud[.]" Compl. ¶ 68. However, "[i]t is well settled in the Second Circuit that a bank's negligent failure to identify warning signs of fraudulent activity, such as atypical transactions – even where such signs converge to form a veritable 'forest of red flags' – is insufficient to impute actual knowledge of ongoing fraud." *Heinert v. Bank of Am., N.A.*, 410 F. Supp. 3d 544, 549–50 (W.D.N.Y. 2019), *aff'd*, 835 F. App'x 627 (2d Cir. 2020); *see also Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) ("Even if [defendant] had reason to suspect that [the fraudster] was laundering money, this does not mean that [defendant] had actual knowledge of the fraudulent scheme perpetrated by [the fraudsters]."); *Zamora v. JPMorgan Chase Bank, N.A.*, No. 14-CV-5344, 2015 WL 4653234, at *3 (S.D.N.Y. July 31, 2015), *aff'd sub nom.* 834 F. App'x 622 (2d Cir. 2020) (dismissing claim for aiding and abetting fraud where the complaint asserted "conclusory allegations that 'willful blindness is the only possible explanation,' or that JPMorgan 'should have suspected an embezzlement and money laundering scheme,' or that JPMorgan exhibited 'conscious disregard for proper banking protocol.'") (internal quotations and citations omitted); *Berdeaux,* 561 F. Supp. 3d at 413 ("ignor[ing] obvious warning signs are insufficient as a matter of law to raise an inference of actual knowledge."); *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 421 (W.D.N.Y. 2017) ("[T]he alleged volume of

substantial 'atypical money transfers' does not create a strong inference of 'actual knowledge' of fraudulent conduct.") (citation omitted); *In re Agape Litigation*, 773 F. Supp. 2d 298, 319 (E.D.N.Y.2011) ("While the Plaintiffs have gathered allegations of 'red flags' and suspicious circumstances, ... these allegations fail to rise to the level of specificity that New York state courts and courts in the Second Circuit have routinely required [to] raise a strong inference of actual knowledge from circumstantial evidence.") (internal citations and quotations omitted).

Plaintiffs' allegations that Chase failed to abide by vague and unspecified "federal law[s] and banking industry standards" when opening the Chase Account are similarly insufficient to establish actual knowledge. *See, e.g.*, *Zamora,* 2015 WL 4653234, at *3 ("Plaintiffs' allegations that JPMorgan failed to abide by vague and unspecified anti[-]money laundering controls are insufficient to plead "actual knowledge."); *Hongying Zhao v. JPMorgan Chase & Co.,* 2019 WL 1173010, at n.8 (S.D.N.Y. Mar. 13, 2019) (same).

Plaintiffs' conclusory and factually deficient allegations are plainly insufficient to meet the high bar required to plead Chase's actual knowledge of the underlying fraud.

### B. Plaintiffs Do Not Allege Facts Establishing That Chase Substantially Assisted the Alleged Underlying Fraud

Plaintiffs have also failed to allege substantial assistance by Chase, as is required to state an aiding and abetting fraud claim. "To plead substantial assistance, a plaintiff generally must plead facts from which the Court can infer that (1) the defendant affirmatively assisted, helped conceal, or failed to act when required to enable the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Berdeaux,* 561 F. Supp. 3d at 416 (internal quotations and citations omitted). "Inaction on the part of the alleged aider and abettor ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation

of a duty to act." *Id.* (internal quotations and citations omitted). Importantly, "routine banking services, including opening accounts, executing wire transfers, and processing checks do not constitute 'substantial assistance.'" *Zamora*, 2015 WL 4653234, at *3 (dismissing claim); *see also McBride v. KPMG Int'l*, 135 A.D.3d 576, 579 (1st Dep't 2016) ("substantial assistance means more than just performing routine business services for the alleged fraudster.") (internal citations and quotations omitted); *Renner v. Chase Manhattan Bank*, No. 98-CIV-926, 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000) ("The mere fact that all participants in the alleged scheme used accounts at [Chase] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.").

Plaintiffs do not allege that Chase took any affirmative steps to assist with any fraudulent activity, making only a conclusory claim that, "upon information and belief," Chase "provided substantial assistance to the fraudster…by either processing the Wire without requiring that the beneficiary identified in the Wire Instructions match the beneficiary of the -0213 Account or opening the -0213 Account." Compl. ¶ 74. These bald, unsupported shots in the dark fall woefully short of the mark. *See e.g.*, *Zhao,* 2019 WL 1173010, at *7 (dismissing claim against Chase, holding "[s]ubstantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur") (internal quotation omitted); *supra* at Argument I.A.

Nor can Plaintiffs rely on allegations of alleged inaction or inadequate response upon ex post facto notification of the fraud to demonstrate substantial assistance, as no fiduciary relationship exists between Plaintiffs and Chase. *See, e.g., Berdeaux,* 561 F. Supp. 3d at 417 ("Although a bank defendant may provide substantial assistance by failing to act when it was required to act, [a]bsent a confidential or fiduciary relationship between the plaintiff and the aider

and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abettor liability.") (internal citations and quotations omitted); *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009), *aff'd sub nom.* 382 F. App'x 107 (2d Cir. 2010) ("to the extent that Musalli bases its aiding and abetting claim on JPMorgan's failure to prevent the diversion by failing to shut down the account or to inform Musalli of the account withdrawals, these omissions also do not rise to the level of substantial assistance because there was no fiduciary relationship between the bank and Musalli."). Notably, Broadway (the originator of the Wire) is not a Chase customer, and so the relationship between them is even more attenuated than Chase's relationship with its own customers (which is not a de facto fiduciary relationship, either).[2] *See, e.g., Berdeaux*, 561 F. Supp. 3d at 417 (dismissing aiding and abetting fraud claim, "because Plaintiffs were not BNYM customers, and because the Complaint has no allegations supporting any other duty running from BNYM to them, BNYM owed Plaintiffs no duty."); *Musalli Factory For Gold & Jewellry*, 261 F.R.D. at 25 ("[B]anks do not owe non-customers a duty to protect them from the intentional torts of their customers.") (citation omitted).

In sum, the claim for aiding and abetting fraud should be dismissed because Plaintiffs have not alleged any facts showing that Chase had actual knowledge or provided substantial assistance.

## III. THE CLAIM FOR AIDING AND ABETTING CONVERSION FAILS FOR THE SAME REASONS AS THE AIDING AND ABETTING FRAUD CLAIM AND BECAUSE PLAINTIFFS CANNOT STATE A PRIMARY VIOLATION FOR CONVERSION

"Under New York law, the elements of [] aiding and abetting a conversion[] and aiding

[2] While the Complaint alleges that Pentalon (the purported intended beneficiary of the Wire) is a Chase customer (Compl ¶ 1), "banks do not owe fiduciary duties . . . to customers in a deposit or lending relationship." *Musalli Factory,* 261 F.R.D. at 26-27; *see also JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 278 (S.D.N.Y. 2024) ("banks do not owe fiduciary duties either to non-customers or even to customers in a deposit or lending relationship.").

and abetting a fraud are substantially similar. The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." *Weshnak v. Bank of Am., N.A.,* 451 F. App'x 61, 61–62 (2d Cir. 2012) (dismissing claims for aiding and abetting conversion and aiding and abetting fraud).[3] The aiding and abetting conversion claim fails here for the same reasons as its aiding and abetting fraud claim. *See supra* at Argument II; Compl. ¶ 66 (Plaintiffs' allegations relating to purported actual knowledge are made "upon information and belief").

The aiding and abetting conversion claim must also be dismissed for the independent (and threshold) reason that the Complaint fails to state a primary claim for conversion. *See Meszaros v. Meszaros,* No. 18-CV-05731, 2019 WL 13225390, at *4 (E.D.N.Y. Sept. 30, 2019) ("Because the existence of a primary claim of conversion is a prerequisite for a claim of aiding and abetting conversion, Plaintiff's aiding and abetting conversion claim also is dismissed."); *Dragons 516 Ltd. v. GDC 138 E 50 LLC*, 201 A.D.3d 463, 464, 162 N.Y.S.3d 6, 9 (1st Dep't 2022) ("the aiding and abetting conversion claim, which requires the existence of a conversion, also fails") (internal quotations omitted). "New York law requires a plaintiff to plead the exercise of unauthorized dominion over specific and identifiable property." *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990, 2017 WL 3600430, at *14 (S.D.N.Y. Aug. 18, 2017) (cleaned up). Crucially here, "funds deposited with a bank do not constitute a specific and identifiable fund" and thus a theory of conversion "does not apply[.]" *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000); *see also Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 574 (E.D.N.Y. 2015) (dismissing claims for conversion where funds deposited in a bank are "not sufficiently specific

[3] "A claim for aiding and abetting conversion requires proof of (1) the existence of a primary violation; (2) knowledge of the violation by the aider and abettors; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer." *See Cain v. Weiss*, 2022 WL 1556410 at *2 (E.D.N.Y. 2022) (dismissing claim for aiding and abetting conversion).

and identifiable, in relation to the bank's other funds, to support such a claim") (citation and internal quotation omitted).

Plaintiffs do not and cannot allege that the funds deposited in the Chase Account via the Wire were somehow segregated from all other deposits at the bank. Thus, "[i]t follows that the plaintiff[s] cannot allege that Chase took or retained specific and identifiable property belonging to [them], and it also follows that a conversion claim cannot be stated." *Tevdorachvili*, 103 F. Supp. 2d at 643 (dismissing conversion claim premised on fraudulent transfers from plaintiff's Chase account); *see also Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998) ("[F]unds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank."); *AJ Energy*, 2019 WL 4688629, at *6 (finding a "conversion claim is easily dismissed" against defendant bank because "New York courts have uniformly held . . . that a claim for conversion does not lie with respect to moneys deposited with a bank").

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF UNDER NYUCC § 4-A-207

Plaintiffs seek a declaratory judgment against Chase under NYUCC § 4-A-207 "directing Chase to immediately return the value of the Stolen Funds to Wells Fargo (so that Wells Fargo may credit Broadway's account…)"). Compl. ¶ 79. In fact, the express language of § 4-A-207 clearly exculpates Chase under the instant circumstances.

As a fundamental threshold matter, this claim effectively seeking recovery of the amount of the Wire is duplicative of the other causes of action and should be dismissed on that basis alone. Moreover, there is no valid legal predicate for seeking such relief, which is too a basis for dismissal. This claim is also an improper attempt to end-run settled law that an originator has no

standing to sue a beneficiary bank (here, Chase) under NYUCC § 4-A-207. In any event, Chase complied with the NYUCC by processing a payment order that Broadway admittedly authorized in-person, and directed funds to the precise account number Broadway provided as permitted by the statute. Broadway cannot shift responsibility for its own mistake onto Chase by asking this Court to declare that Chase effectively reimburse it for the Wire that it authorized, albeit under the mistaken impression that the Chase Account was titled to Pentalon (it was not).

### A. The Declaratory Judgment Claim is Duplicative of the Aiding and Abetting Claims and Should Be Dismissed On That Basis

It is well-established that if a declaratory judgment claim "is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action," the claim must be dismissed. *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006) (dismissing declaratory judgment claim). This is especially true where the substantive causes of actions (here, the aiding and abetting claims) "necessarily settle the issues for which the declaratory judgment is sought, meaning that the DJA claim[] will serve no useful purpose and will not serve to offer relief from uncertainty." *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (internal quotations and citations omitted) (dismissing declaratory judgment claim). In other words, "Courts generally reject a DJA claim when other claims in the suit will resolve the same issues." *Id.* at 99.[4]

[4] *See also, e.g., Adeia Guides Inc. v. Shaw Cablesystems G.P.*, No. 23-CV-08796, 2025 WL 2771608, at *3 (S.D.N.Y. Sep. 29, 2025) (dismissing declaratory judgment claim as duplicative); *CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24-CV-07145, 2025 WL 2614077, at *3 (S.D.N.Y. Sep. 10, 2025) (same); *Steel River Sys., LLC v. Variant Alt. Income Fund*, No. 24-CV-8676, 2025 WL 2531353, at *15 (S.D.N.Y. Sep. 3, 2025) (dismissing complaint, including declaratory judgment claim that was duplicative of claim brought under N.Y. UCC § 9-625(a)); *Optanix, Inc. v. Alorica Inc.*, No. 20-CV-09660, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (dismissing declaratory judgment claim as duplicative of breach of contract claim); *Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 407-08 (S.D.N.Y. 2010) (dismissing claim for declaratory judgment as duplicative of claim for conversion, among others).

Here, the claims for aiding and abetting fraud and aiding and abetting conversion rest on the same factual predicate for the declaratory judgment claim—namely, the allegation that Chase is somehow responsible for the Wire that Broadway authorized in-person, based on a purported mismatch between the intended beneficiary of the Wire and the owner of the Chase Account. The declaratory judgment claim is thus duplicative of the (deficient) aiding and abetting claims and must be dismissed. *See In re Generali COVID-19 Travel Ins. Litig.*, 576 F. Supp. 3d 36, 54-55 (S.D.N.Y. 2021) ("The plaintiffs' claims for a declaratory judgment in this case are entirely duplicative of their substantive claims, and therefore would neither serve a useful purpose in clarifying the parties' legal relations nor afford relief from uncertainty.").

**B. There Is No Valid Legal Predicate For a Claim for Declaratory Judgment**

A claim for declaratory judgment "requires a valid legal predicate." *See In re Generali*, 576 F.Supp.3d at 55 (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012), internal quotation marks excluded). As all of Plaintiffs' claims are premised on rank speculation as to the owner of the Chase Account that is demonstrably incorrect, none of them have merit and "there is no such predicate in this case." *Id; see also DirecTV Latin America, LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 434 (S.D.N.Y. 2010) (dismissing declaratory judgment claim "[b]ecause the premise for DirecTV's argument opposing dismissal appears to be factually incorrect").

**C. Plaintiffs Cannot Pursue A Claim Against Chase For Purported Violation of NYUCC § 4-A-207**

NYUCC § 4-A-207 by its terms does not allow Broadway to recover from Chase, which is precisely what Plaintiffs are seeking through the declaratory judgment claim. *See* Compl. ¶ 79. The claim thus fails on this basis as well.

On point and illustrating these legal concepts is *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-CV-6566, 2016 WL 4939074 at *1 (S.D.N.Y. Sept. 12, 2016). In *Frankel-Ross*,

the plaintiff alleged her funds were fraudulently wired from another bank account in her name to a Chase account. *Id.* at *1. She alleged the wire transfer form referred to one entity name, but in fact the account at Chase was held by a differently named entity. *Id.* She sued Chase and brought causes of action including NYUCC § 4-A-207. *Id.* at *2. The court granted Chase's motion to dismiss, finding the NYUCC § 4-A-207 provides no cause of action against the beneficiary bank (itself, Chase) for lack of privity:

> [E]ven assuming that JPMCB knew that the name on the face of the payment order and the account number identified different persons, Frankel-Ross would not have a cause of action against JPMCB. . . . *See id.* § 4-A-207 cmt. 2 (where beneficiary's bank knows name and account number refer to different persons but pays according to the account number regardless, the originator's bank need not pay the beneficiary's bank and the originator need not pay the originator's bank (citing Section 4-A-402); *see also* 6A William D. Hawkland et al., UCC Series § 4-A-207:2 ("[I]n any of the circumstances enumerated in U.C.C. § 4-A-207, the determination that no person has any rights or obligations in the payment order implicates the full panoply of U.C.C. Article 4-A provision . . . .") . . . [Plaintiff] cannot maintain a cause of action pursuant to Section 4-A-207 against JPMCB.

*Id.* at *3. The Court found this result "perfectly logical" because:

> As the Second Circuit has noted, "[t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, [and] would create a risk of multiple or inconsistent liabilities . . . .

*Id.* at *4.

Just as the plaintiff in *Frankel-Ross*, Plaintiffs cannot state any cause of action against Chase as the beneficiary's bank under NYUCC § 4-A-207. *See also Wellton Int'l Express v. Bank of China (Hong Kong),* 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) ("As the beneficiary bank, Wells Fargo was not a party to the payment order. Neither was JP Morgan, as the intermediary bank . . . Because there is a lack of privity between Plaintiffs and Wells Fargo, and between Plaintiffs and JP Morgan, Plaintiffs cannot maintain a cause of action against either defendant under Sec. 4-A-207."). And because Plaintiffs cannot state this cause of action directly against

Chase, it cannot ask this Court to "declare" a return of the amount of the Wire to Pentalon's bank under this same statute. *See, e.g., Johnson v. JPMorgan Chase Bank, N.A.*, 488 F.Supp.3d 144, 157-58 (S.D.N.Y. 2020) ("plaintiffs' declaratory judgment claims must be dismissed because plaintiffs have failed to identify an underlying substantive cause of action").

### D. NYUCC 4-A-207 Provides The Framework For Processing A Wire Based On Account Number And Chase Complied With Its Duties Under Article 4-A

Assuming the Court were to look further, no actual controversy exists to sustain a declaratory judgment claim because, under Article 4-A of the NYUCC, a bank has no duty to verify that the account number in a payment order corresponds to the beneficiary named therein. *See, e.g. Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A.*, 750 F. Supp. 3d 1180, 1187 (E.D. Cal. 2024) (dismissing declaratory judgment claim against Chase finding "no actual controversy" because the complaint "fails to sufficiently allege Chase's actual knowledge of an inconsistency between the named beneficiary of the wire transfers and the account holder" to sustain a claim under UCC 4-A-207).

Article 4-A is unmistakable as to what Chase's duties are when processing a payment order. NYUCC § 4-A-207 specifically addresses the situation where a payment order sent by an originator (here, Broadway), identifies a beneficiary by both name and account number, but the name provided (here, allegedly, Pentalon) does not match the account number at the beneficiary's bank (here, the account number of the Chase Account). In that case, "if the beneficiary's bank [Chase] does not know that the name and number refer to different persons, it may rely on the [account] number as the proper identification of the beneficiary of the order." NYUCC § 4-A-207(2)(a). Importantly, the beneficiary's bank "*need not determine whether the name and number refer to the same person*." *Id.* (emphasis added). Put differently, Chase has zero obligation under § 4-A-207(2)(a) to investigate and verify a payment order before processing it. *See Frankel-Ross*,

2016 WL 4939074, at *5 ("Section 4-A-207 itself forecloses such a duty: it specifically states that '[t]he beneficiary's bank need not determine whether the name and [account] number refer to the same person.'") (quoting NYUCC § 4-A-207(2)(a)).[5]

Thus, "by the statute's explicit terms, a bank . . . , that accepts a wire transfer and credits the proceeds to the account number designated by the originator, has handled the wire transfer properly[.]" *Targoff v. Wells Fargo Bank, N.A.*, 67 Misc. 3d 504, 508 (N.Y. Sup. Ct., Westchester Cty. 2020). Indeed, "[n]umerous trial level courts have recognized that banks ***act properly*** in accepting a wire transfer where the beneficiary's name and account number do not match but, under certain conditions, the funds transfer can still go forward based on the beneficiary's account number alone." *Id.* (internal citations and quotations omitted, emphasis added, collecting cases).[6]

---

[5] The reason for this rule, as the Official Comments to NYUCC § 4-A-207 recognize, is that requiring a beneficiary's bank like Chase to compare account names to numbers for every payment order it receives would be an impossible task and crippling burden on the banking industry:

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. . . . If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. Subsection (b) [subsec. (2)] allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons.

N.Y. U.C.C. Law § 4-A-207, Official Comment 2 (McKinney).

[6] As the beneficiary bank associated with the Wire, Chase was obligated to credit the Chase Account. Under the NYUCC, the beneficiary bank has a legal duty to pay the amount of the order to the beneficiary. *See* NYUCC § 4A-404(1) ("If a beneficiary's bank accepts a payment order, the bank is obliged to pay the amount of the order to the beneficiary of the order."). Indeed, had Chase refused to comply with Broadway's instructions to process the Wire and pay the Chase Account, it would violate the NYUCC. *See* NYUCC § 4A-404(1) ("If the bank refuses to pay after demand by the beneficiary and receipt of notice of particular circumstances that will give rise to consequential damages as a result of nonpayment, the beneficiary may recover damages resulting from the refusal to pay to the extent the bank had notice of the damages.").

Even assuming that Plaintiffs could pursue a claim against Chase under NYUCC § 4-A-207 (they cannot), the Complaint also fails, on its face, to state a claim under that provision. Under Article 4A, a bank is not liable for processing a fraudulent payment order if the bank does not "know" that the name and account number refer to different persons. *See* NYUCC § 4-A-207(b).[7] The allegations in the Complaint do not establish that Chase had actual knowledge of any discrepancy between the beneficiary's name and account number prior to accepting the Wire, as the statute requires.

As set forth in Argument II.A. the Complaint's allegations of "actual knowledge" are made entirely upon "information and belief" and therefore fail to adequately plead that Chase had actual knowledge of any alleged mismatch between the account number and the accountholder before acceptance of the payment order. *See Goldberg v. Bank of Am.*, No. 653303/2019, 2024 WL 4125014, at *1 (Sup. Ct. N.Y. Cty. Aug. 27, 2024) (dismissing NYUCC § 4-A-207 claim because "plaintiffs cannot allege that Wells Fargo had actual knowledge of the alleged fraud, or any basis to infer such a fraud until after the wire transfer had been processed" and "allowing liability on these facts would eviscerate the provisions of the UCC explicitly barring such liability in the absence of actual knowledge"). This crucial element of a NYUCC § 4-A-207 claim is thus missing and renders this claim subject to dismissal.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Chase's Motion in its entirety. Moreover, as any amendment would be futile as Chase is not responsible under any theory for the authorized Wire, the dismissal should be with prejudice.

[7] Under the NYUCC's definitions, to "know" something means having "actual knowledge" of it. NYUCC § 1-202(b).

Dated: November 12, 2025
New York, New York

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: *\/s/ Sylvia E. Simson*
Sylvia E. Simson
Leah N. Jacob
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Sylvia.Simson@gtlaw.com
Leah.Jacob@gtlaw.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*