UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 218 Broadway, LLC and Pentalon Construction, Inc.<br><br>Plaintiffs,<br><br>- against -<br><br>J.P. Morgan Chase Bank, N.A.; Wells Fargo Bank, N.A.; and John Doe Chase Employees #1-#10,<br><br>Defendants. | Case No.: 1:25-cv-07386-LJL<br><br>ORAL ARGUMENT REQUESTED |

# WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**ZEICHNER ELLMAN & KRAUSE LLP**
730 Third Avenue
New York, New York 10017
Telephone: (212) 223-0400

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

- A. The Complaint and the Payment Order ..... 2
- B. The Deposit Agreement ..... 4
- C. Procedural History ..... 6

ARGUMENT ..... 6

- A. Dismissal Standard of Review ..... 6
  - 1. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) ..... 6
  - 2. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) ..... 7
- B. Broadway's Claim for Violation of Utah Code Ann. § 70A-4a-207 Should be Dismissed ..... 8
- C. Pentalon Has No Standing to Sue Wells Fargo ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. Westpoint-Pepperell, Inc.*,
945 F.2d 40 (2d Cir. 1991) ....................6

*Arubawater Corp. v. Wells Fargo Bank, N.A.*,
703 F. Supp. 3d 995 (D. Ariz. 2023) ....................12

*Berry v. Regions Fin. Corp.*,
507 F. Supp. 3d 972 (W.D. Tenn. 2020) ....................12

*Cunningham v. Bank of N.Y. Mellon N.A.*,
2015 U.S. Dist. LEXIS 88717 (E.D.N.Y. 2015) ....................7

*Evergreen E. Coop. v. Whole Foods Mkt., Inc.*,
2023 U.S. App. LEXIS 2155 (2nd Cir. Jan. 27, 2023) ....................6

*Frankel-Ross v. Congregation Ohr Hatalmud*,
2016 U.S. Dist. LEXIS 128342 (S.D.N.Y. Sept. 13, 2016) ....................8, 12

*GN Pro. Grp., LLC v. Well Done ASAP, LLC*,
764 F. Supp. 3d 757 (N.D. Ill. 2025) ....................10

*Gold Standard v. Getty Oil Co.*,
915 P.2d 1060 (Utah 1996) ....................12

*Grain Traders v. Citibank, N.A.*,
160 F.3d 97 (2nd Cir. 1998) ....................8, 12

*Hall v. IRS (In re Hall)*,
629 B.R. 124 (Bankr. E.D.N.Y. 2021) ....................7

*Harriott v. Nationstar Mortg. LLC*,
2018 U.S. Dist. LEXIS 168023 (E.D.N.Y. Sept. 28, 2018) ....................7

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*,
19 F.4th 58 (2nd Cir. 2021) ....................12

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) ....................12

*Shi v. TL & CG Inc.*,
2022 U.S. Dist. LEXIS 121980 (S.D.N.Y. July 11, 2022) ....................12

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014) ....................7

*Zaidi v. JP Morgan Chase Bank, N.A.*,
2021 U.S. Dist. LEXIS 42379 (E.D.N.Y. March 5, 2021) ....................12

*Zevon v. Dep't Stores Nat'l Bank*,
2013 U.S. Dist. LEXIS 97887 (S.D.N.Y. July 8, 2013) ....................7

**Statutes**

UCC Section 4A-402 ....................12

Utah Code Ann. § 70A-4a-202 ....................2, 3, 7, 11

Utah Code Ann. § 70A-4a-207 .................... *passim*

**Rules**

Fed. R. Civ. P. 12 ....................6, 7, 13

## PRELIMINARY STATEMENT

By this action, plaintiffs 218 Broadway, LLC ("Broadway") and Pentalon Construction, Inc. ("Pentalon" and, collectively with Broadway, "Plaintiffs"), seek to recover the proceeds of a Wire Transfer (defined below) they admit Broadway instructed Wells Fargo Bank, N.A ("Wells Fargo") to send. Plaintiffs allege an unknown third party hacked the email of Pentalon's controller and sent wire instructions to Broadway, following which Broadway personally appeared at a Wells Fargo financial center and completed a Wells Fargo form of Payment Order (defined below) in which it identified the (i) name of the beneficiary, (ii) the name of the beneficiary bank, and (iii) the account number to which it instructed Wells Fargo to send the Wire Transfer. It is undisputed that Wells Fargo sent the Wire Transfer pursuant to the strict written instructions Broadway gave in the Payment Order. Rather, despite this immutable documentary evidence to the contrary, by their Verified Complaint dated August 7, 2025 (the "Complaint") Plaintiffs seek to manufacture the legally unsupportable claim that Wells Fargo violated Utah Code Ann. § 70A-4a-207 because of a discrepancy between the account number and beneficiary name identified in the Payment Order.

Quite simply and as set forth in greater detail below, the Uniform Commercial Code, settled case law, and the agreements governing Broadway's account prohibit this claim because a mismatch, such as that about which Plaintiffs complain and which they brough upon themselves, is not the basis for a claim against an originating bank, as Wells Fargo is here. Specifically, Plaintiffs' claim against Wells Fargo under Utah Code Ann. § 70A-4a-207 fails as a matter of law because Plaintiffs do not and cannot allege that Wells Fargo did not carry out Broadway's strict instructions as set forth in the Payment Order. In addition, Wells Fargo is not, as a matter of law, liable because Wells Fargo provided notice to Broadway consistent with Utah

Code Ann. § 70A-4a-207(5) that a payment order might be processed and paid on the basis of an identified account number, even if the account number identifies a person different from the named beneficiary. Moreover, Plaintiffs' claim against Wells Fargo is barred by the Deposit Agreement (defined below) and Utah Code Ann. § 70A-4a-202(1), which prohibit Plaintiffs from seeking reimbursement for a payment order that Broadway authorized. Finally, Plaintiff Pentalon has no standing to maintain a claim against Wells Fargo. Plaintiff Pentalon appears to be named as a plaintiff solely because it is the intended beneficiary of the Wire Transfer. However, New York does not recognize a claim by such a party against an originator bank. Indeed, if it did, by the terms of the Deposit Agreement, Broadway indemnified Wells Fargo against such a claim.

For all the foregoing reasons, the Court should grant Wells Fargo's motion and dismiss the Complaint against it in its entirety and with prejudice.

## **STATEMENT OF FACTS**[1]

### A. **The Complaint and the Payment Order**

Plaintiffs allege that Wells Fargo maintains certain accounts in the name of Broadway, including an account ending 2109 (the "Wells Fargo Account"). *See* Complaint ⁋ 14 (Leinbach Decl., **Exhibit 4**). Plaintiffs also allege Broadway engaged Pentalon as a general contractor in connection with a multi-use real estate project in Salt Lake City, Utah (the "Project"). *See id.* ⁋⁋ 12, 23.

---

1 For purposes of this motion to dismiss, Wells Fargo treats the allegations in Plaintiffs' Verified Complaint dated August 7, 2025 as true, unless such allegations are belied by the Payment Order (defined below), Customer Application (defined below), or Deposit Agreement (defined below).

Plaintiffs allege Pentalon sent an invoice to Broadway on or before December 13, 2023 for work performed on the Project (the "Invoice"). *See* Complaint ⁋ 28 (Leinbach Decl., Ex. 4). Broadway allegedly approached Pentalon for wire instructions to pay the Invoice. *See id.* ⁋ 29. According to Plaintiffs, on December 13, 2023[2] Broadway received an email that they allege was "purportedly from Pentalon's Controller, with a purported copy to Pentalon's President and Pentalon's Project Manager, which included wire account instructions and beneficiary information for Pentalon (the "Wire Instructions")." *Id.* ⁋ 30. Plaintiffs allege that they fell for a scam because this email was sent by a "hacker/fraudster monitoring and manipulating communications in real-time had forged the December 2024 E-Mail, unbeknownst to both Broadway and Pentalon." *Id.* ⁋ 31. Importantly, Plaintiffs allege the Wire Instructions identified the beneficiary as "Pentalon." *Id.* While the Complaint is not entirely clear, it appears that Plaintiffs allege that the account number to which the Wire Instructions instruct Broadway to send the Wire Transfer was, in fact, opened by someone other than Pentalon at defendant JPMorgan Chase Bank, N.A. ("Chase") in the name of "Pentalon Construction," but which is not controlled by Pentalon. *See, e.g.,* Complaint ⁋ 33 (Leinbach Decl., Ex. 4).

On December 14, 2023, a representative of Broadway personally appeared at a Wells Fargo financial center and executed a Wells Fargo form of Wire Transfer Services Outgoing Wire Transfer Request (the "Payment Order") by which it instructed Wells Fargo to send a wire transfer in the amount of $637,566.33 (the "Wire Transfer") to Chase for credit to an account number ending 0213 (the "Beneficiary Account Number") and the name "Pentalon Construction" (the "Beneficiary Name"). *See* Payment Order at 1 (Cook Decl., **Exhibit 1**); *see also* Complaint

[2] Plaintiffs' Complaint states that the email was sent on December 13, 2024, but given the other dates in the Complaint, it appears this is a typographical error. *See* Complaint ⁋ 30.

¶¶ 35, 38 (Leinbach Decl., Ex. 4). Importantly, Plaintiffs concede that the Beneficiary Name in the Payment Order is accurate. *See* Complaint ¶ 48.

The Payment Order form Broadway executed expressly notifies Broadway that payment might be made on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary:

> **Reliance on Information Provided.** You acknowledge that you are responsible for providing Wells Fargo with all information required by the Beneficiary's bank, including the reason for payment, if required. Sending wires without the required information can cause the wire to be delayed, returned, or assessed additional fees. **If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary**. If a wire transfer request describes a financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.

Payment Order at 2 (emphasis added). Based upon the Payment Order, on December 14, 2023 Wells Fargo sent the Wire Transfer, as instructed. *See* Payment Order; Complaint ¶¶ 48-49.

Plaintiffs allege that on or about December 28, 2023, they learned that the Wire Instructions were not sent by Pentalon and informed Wells Fargo. *See* Complaint ¶¶ 45, 47 (Leinbach Decl., Ex. 4). Plaintiffs allege they asked Wells Fargo to open a fraud investigation and attempt to recall the wire transfer from Chase. *See id.* ¶ 47.

## B. <u>The Deposit Agreement</u>

By signing a Consumer Account Application dated May 28, 2021 (the "Application") Broadway opened the Wells Fargo Account. *See* Application (Cook Decl., **Exhibit**

**2**). In the Application, Broadway acknowledges receipt of a copy of the Account Agreement ("Deposit Agreement") and agrees to be bound by its terms as amended from time to time:

> Each person who signs the "Certified/Agreed To" section of this Application certifies that:
>
> **A. The Customer's use of any Wells Fargo Bank, N.A. ("Bank") deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.**

Application, p. 2 (Cook Decl., Ex. 2) (emphasis in original).

The Deposit Agreement contains a funds transfer disclosure section, which provides that, in instances where a customer's payment order describes the beneficiary inconsistently by name and account number, Wells Fargo will rely upon the account number listed in the payment order:

> **Reliance on identification numbers**
>
> If an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we'll rely on the beneficiary account number even if the account number identifies a party different from the named recipient. If an instruction or order to transfer funds describes a participating financial institution inconsistently by name and identification number, the identification number may be relied on as the proper identification of the financial institution.

Deposit Agreement, p. 18 (Cook Decl., **Exhibit 3**).

## C. Procedural History

Plaintiffs commenced this action by filing the Complaint in New York County Supreme Court on August 7, 2025 (the "State Court Action"). *See* Complaint (Leinbach Decl., Ex. 4). By a Notice of Removal dated September 5, 2025, Chase removed the State Court Action to this Court. *See* Notice of Removal [Docket No. 1]. By Order dated September 10, 2025, this Court enlarged the time of Wells Fargo and Chase to respond to the Complaint to November 12, 2025. (*See* Leinbach Decl. ⁋ 3.).

## ARGUMENT

## A. Dismissal Standard of Review

### 1. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, 2023 U.S. App. LEXIS 2155, *4 (2nd Cir. Jan. 27, 2023) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 713 (2d Cir. 2022)).

In considering a motion to dismiss, the court may consider the "facts stated on the face of the complaint," as well as "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the

allegations of the complaint." *Zevon v. Dep't Stores Nat'l Bank*, 2013 U.S. Dist. LEXIS 97887, *11 (S.D.N.Y. July 8, 2013) (*quoting Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).

2. **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)**

"Courts in this circuit have stated that '[a] case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Hall v. IRS (In re Hall)*, 629 B.R. 124, 140 (Bankr. E.D.N.Y. 2021) (quoting *White v. First Franklin Fin. Corp.*, 2019 WL 1492294, at *3 (E.D.N.Y. Apr. 4, 2019)). "The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Harriott v. Nationstar Mortg. LLC*, 2018 U.S. Dist. LEXIS 168023, *11-12 (E.D.N.Y. Sept. 28, 2018) (*quoting Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'") (*quoting Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

"In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of N.Y. Mellon N.A.*, 2015 U.S. Dist. LEXIS 88717, *3 (E.D.N.Y. 2015); *see also Harriott*, 2018 U.S. Dist. LEXIS 168023, at *12.

### B. Broadway's Claim for Violation of Utah Code Ann. § 70A-4a-207 Should be Dismissed

It is indisputable that wire transfers are governed exclusively by UCC Article 4A. As it is relevant to the claims against Wells Fargo here,

> A "payment order" is "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." Id. § 4-A-103(1)(a). The "originator" is "the sender of the first payment order in a funds transfer," id. § 4-A-104(3), the "beneficiary" is "the person to be paid by the beneficiary's bank," id. § 4-A-103(1)(b) and the "beneficiary's bank" is "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account." Id. § 4-A-103(1)(c).

*Frankel-Ross v. Congregation Ohr Hatalmud*, 2016 U.S. Dist. LEXIS 128342, *6 (S.D.N.Y. Sept. 13, 2016); *see also Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 100 (2nd Cir. 1998).

Here, Broadway is the originator, and Wells Fargo is the originator's bank. Chase, on the other hand, is the beneficiary's bank to which the Wire Transfer was sent, for credit to the Beneficiary Account Number. With this factual framework, we observe that Utah Code Ann. § 70A-4a-207(2) provides, *inter alia*, as follows:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons then the following rules apply:
>
> (a) Except as otherwise provided in Subsection (3), the beneficiary's bank may treat the person identified by number as the beneficiary of the order if the bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

> (b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

As a matter of law, § 4-207, thus, squarely places on the beneficiary bank the duty to identify and address any mismatch between the name and account number to which a wire transfer is sent.

Plaintiffs' claim that Wells Fargo – the originator's bank –failed to detect an alleged discrepancy between the account number and beneficiary name is liable to Plaintiffs pursuant § 4A-207. *See* Complaint ⁋⁋ 81-88 (Leinbach Decl., Ex. 4). But this is belied by the provision cited above.

Next, this claim against fails because Plaintiffs do not and cannot allege any discrepancy in the Payment Order. To the contrary, the Complaint alleges that by the Payment Order Broadway directed Wells Fargo to send the Wire Transfer to precisely the Beneficiary Name and the Beneficiary Account Number that it did. Plaintiffs do not allege the beneficiary identified by the Beneficiary Account Number does not match the name associated with the Account. Rather, the discrepancy alleged in the Complaint is one that only Chase would have had the opportunity to identify. Fundamentally, nothing in either Utah Code Ann. § 70A-4a-207 or the Deposit Agreement even intimates that Wells Fargo has a duty to investigate the accuracy of information contained in the Payment Order that Broadway prepared.

Perhaps cognizant of this, Plaintiffs allege Wells Fargo employees represented that Wells Fargo would not process payment orders that contain a discrepancy between the account number and beneficiary name. *See, e.g.*, Complaint ⁋⁋ 16-18. This Court must ignore this claim because the Deposit Agreement is clear in its prohibition of such alleged parol evidence. *See*

Deposit Agreement at 2 (the Deposit Agreement "replaces all prior agreements regarding your account, including any verbal or written statements or representations.") (Cook Decl., Ex. 3). Indeed, a customer cannot rely upon verbal representations that contradict the written account agreement governing an account. *See, e.g., Gold Standard v. Getty Oil Co.*, 915 P.2d 1060, 1068 (Utah 1996) (under Utah law "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information.").

This claim is similarly prohibited by § 4A-207(5). It provides, in relevant part, as follows:

> If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary. Proof of notice may be made by any admissible evidence. The originator's bank satisfies the burden of proof it if proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates.

Utah Code Ann. § 70A-4a-207(5).

An originator's bank is not liable for the payment of a payment order containing a discrepancy between the account number and beneficiary name if it provided its customer with notice that a payment order might be paid using the account number alone, even if the payment order contains a discrepancy between account number and beneficiary name. *See GN Pro. Grp., LLC v. Well Done ASAP, LLC,* 764 F. Supp. 3d 757, 761 (N.D. Ill. 2025); *Arubawater Corp. v. Wells Fargo Bank, N.A.*, 703 F. Supp. 3d 995, 1004 (D. Ariz. 2023); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 980 (W.D. Tenn. 2020).

Here, Wells Fargo provided its customer Broadway with notice that payment orders it sends from the Wells Fargo Account might be paid based upon the identified account number alone. *See* Payment Order at 2 ("If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary."); Deposit Agreement at 18 ("If an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we'll rely on the beneficiary account number even if the account number identifies a party different from the named recipient.") (Cook Decl., Exs. 2, 3). Thus, Plaintiffs could never assert a claim against Wells Fargo under Utah Code Ann. § 70A-4a-207 in connection with the Payment Order.

Finally, Plaintiffs' claim against Wells Fargo is barred by the Deposit Agreement and Utah Code Ann. § 70A-4a-202(1). Specifically, § 4A-202(1), provides that a payment order is authorized and, thus, properly payable when, as here, the customer directs the bank to comply with the payment order. Wells Fargo's actions here, thus, were wholly consistent and in compliance with the expectations of§ 4A-202(1). *See* Utah Code Ann. § 70A-4a-202(1). Moreover, the Deposit Agreement states that Wells Fargo may rely on the beneficiary account number in paying a payment order, even if the account number identifies a party different from the named recipient in a payment order. *See* Deposit Agreement at 18 (Leinbach Decl., Ex. 4). Wells Fargo's actions are similarly consistent with this contractual provision.

For each of these reasons, Plaintiffs' claim against Wells Fargo should be dismissed.

**C. <u>Pentalon Has No Standing to Sue Wells Fargo</u>**

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2nd Cir. 2021) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To demonstrate an injury in fact, a plaintiff 'must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical.'" *Shi v. TL & CG Inc.*, 2022 U.S. Dist. LEXIS 121980, *22 (S.D.N.Y. July 11, 2022) (*quoting Maddox, N.A.*, 19 F.4th at 62). A party has standing to bring a claim only when it is the proper party to bring each claim that it seeks to prosecute. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012).

The law in New York is clear in holding that a plaintiff has no standing to sue a bank concerning transactions in a bank account where, as here, the plaintiff is not the accountholder. *See, e.g., Zaidi v. JP Morgan Chase Bank, N.A.*, 2021 U.S. Dist. LEXIS 42379, *12n4 (E.D.N.Y. March 5, 2021) ("Additionally, as neither AFZ nor SKZ are parties to account 3683, all their claims as [*sic*] that account as dismissible for lack of standing.").

Caselaw interpreting UCC Article 4A is consistent. In the seminal case of *Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 100 (2nd Cir. 1998), the United States Court of Appeals for the Second Circuit held that Section 4A-402 "incorporate[s] a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Id.* at 101; *see also Frankel-Ross*, 2016 U.S. Dist. LEXIS 128342, *10; (*quoting Grain Traders*). Under this privity

requirement, "a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment." *Grain Traders*, 160 F.3d at 106.

Here, the Complaint concedes that Pentalon is the intended beneficiary of the Wire Transfer and, thus, not a Wells Fargo customer. It is undisputed that this Account is maintained solely in the name of Broadway – and not Pentalon. *See* Complaint ¶ 14 (Leinbach Decl., Ex 4); Account Application (Cook Decl., Ex. 2). As a result, Plaintiff Pentalon is not in privity with Wells Fargo and, thus, lacks standing to sue for violation of Utah Code Ann. § 70A-4a-207.

## CONCLUSION

For each of the foregoing reasons, Wells Fargo respectfully seeks the entry of an Order: (i) pursuant to Fed. R. Civ. P. 12(b), dismissing Plaintiffs' Complaint against Wells Fargo in its entirety; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 12, 2025

ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ Bryan D. Leinbach
Bryan D. Leinbach
730 Third Avenue
New York, New York 10017
(212) 223-0400
bleinbach@zeklaw.com

*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATION**

I hereby certify that this document complies with the Court's Individual Rules of Practice for memorandums of law in that the total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, certificate of compliance or any authorized addendum containing statutes, rules, regulations, etc., and caption and signature block is 3,841 as computed by Microsoft Word.

Dated: New York, New York
November 12, 2025

ZEICHNER ELLMAN & KRAUSE LLP

By /s/ *Bryan D. Leinbach*

Bryan D. Leinbach
730 Third Avenue
New York, New York 10017
(212) 223-0400
bleinbach@zeklaw.com

*Counsel for Wells Fargo Bank, N.A.*