USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

218 BROADWAY, LLC and PENTALON CONSTRUCTION, INC.,

Plaintiffs,

-v-

J.P. MORGAN CHASE BANK, N.A., et al.,

Defendants.

---

25-cv-7386 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

J.P. Morgan Chase Bank, N.A. ("Chase") and Wells Fargo Bank, N.A. ("Wells Fargo" and, together with Chase, "Defendants") each have moved to dismiss the complaint ("Complaint") of Plaintiffs 218 Broadway, LLC ("218 Broadway") and Pentalon Construction, Inc. ("Pentalon" and, together with 218 Broadway, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] for failure to state a claim for relief. Dkt. Nos. 12, 15.

For the following reasons, the motions are granted.

## BACKGROUND

For purposes of these motions, the Court accepts as true the well-pleaded allegations of the Complaint as supplemented by the documents incorporated by reference.

Plaintiff 218 Broadway is a small Utah limited liability company with its principal place of business in Salt Lake City, Utah. Dkt. No. 1-1 ("Compl.") ¶ 2. It is a real estate developer

---

[1] Wells Fargo also moves to dismiss the claims brought by Pentalon pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 18 at 7, 12–13. However, in their opposition brief, Plaintiffs clarify that only 218 Broadway brings a claim for declaratory judgment against Wells Fargo. Dkt. No. 22 at 12. The Court, therefore, need not consider the Rule 12(b)(1) challenge raised by Wells Fargo.

committed to affordable yet high-quality real estate development in Salt Lake City. *Id.* ¶ 3. Plaintiff Pentalon is a well-known and longstanding commercial building contractor primarily working in Utah to create multi-family housing in urban areas of need, specializing in affordable and market-rate housing. *Id.* ¶ 5. It is a Utah domestic business corporation with its principal place of business in Salt Lake City. *Id.* ¶ 4.

Defendants Chase and Wells Fargo are each global financial services firms based in the United States. *Id.* ¶¶ 6–7. Chase is a Delaware corporation with its headquarters in New York, New York. *Id.* ¶ 6. Wells Fargo is a Delaware corporation with its headquarters in Sioux Falls, South Dakota. *Id.* ¶ 7. Since its 2021 founding, 218 Broadway has banked exclusively with Wells Fargo, through which it sends and receives wire transfers of funds. *Id.* ¶¶ 14, 21. Pentalon has used Chase for its banking needs for decades, although it has also used other banks. *Id.* ¶¶ 25–26.

Since 2021, 218 Broadway has been engaged in managing a high-profile construction project to bring forty-eight (48) residential units and one (1) commercial unit to downtown Salt Lake City (the "Project"). *Id.* ¶ 12. It anticipates that it will receive a profit of nearly $875,823 from the Project while also providing substantial benefits to the local community. *Id.* ¶ 13. Pentalon is 218 Broadway's general contractor for the Project. *Id.* ¶ 23. Pentalon has calculated an anticipated profit of approximately $600,000 from the Project while providing substantial benefits to its workers and the local community. *Id.* ¶ 24.

Shortly before December 13, 2023, Pentalon sent an invoice to 218 Broadway seeking a milestone payment of $637,566.33 for work performed to date in furtherance of the Project. *Id.* ¶ 28. On December 13, 2023, alongside the invoice, 218 Broadway requested wire instructions

from Pentalon. *Id.* ¶ 29. That same day,[2] 218 Broadway received an email which included wire account instructions and beneficiary information for Pentalon (the "Wire Instructions"). *Id.* ¶ 30. On its face, the email reflected that it was sent by Pentalon's Controller, with a purported copy to Pentalon's President and Pentalon's Project Manager. *Id.* The Wire Instructions directed 218 Broadway to send the money to a specific nine-digit account number ending in 0213 (the "0213 Account") and titled to "Pentalon Construction" at Chase. *Id.* ¶ 32. While the invoice was legitimate, the email containing the Wire Instructions that 218 Broadway received was forged by a hacker/fraudster monitoring and manipulating communications in real-time, unbeknownst to both 218 Broadway and Pentalon. *Id.* ¶ 31.

The following day, December 14, 2023, 218 Broadway sought to pay the invoice in accordance with the Wire Instructions. *Id.* ¶ 32. 218 Broadway executed the wire in person at Wells Fargo, through personnel who handled all such 218 Broadway wires. *Id.* ¶ 35. 218 Broadway gave Wells Fargo the name, address, and account number for the intended beneficiary of the wire, including the name "Pentalon Construction" with a Utah address, and the 0213 Account information. *Id.* ¶¶ 36, 38. The wire was then executed for the full amount of the invoice, and 218 Broadway sent a confirmation email to Pentalon verifying that Wells Fargo sent the wire to Chase and that Pentalon would receive the wire at Chase later that day. *Id.* ¶¶ 38–39.

Pentalon was unable to find the funds wired by 218 Broadway in its accounts. *Id.* ¶ 40. After Pentalon was unable to provide the Wire Instructions it purportedly sent to 218 Broadway, it was discovered that the email containing the Wire Instructions was created by a

[2] The Complaint alleges that the email was received on December 13, 2024. *Id.* ¶ 30. From context, it is apparent that the date contains a typographical error and should state 2023.

hacker/fraudster and not by Pentalon. *Id.* ¶¶ 45–46. Pentalon never authorized the opening or usage of the 0213 Account (and indeed has entirely separate accounts at Chase). *Id.* ¶ 51.

Upon discovering the fraud, and within days of the wire being sent, 218 Broadway met in person with Wells Fargo to review the matter, open a fraud investigation, and place a wire recall request to Chase. *Id.* ¶ 47. Wells Fargo confirmed that it had sent the wire amount, the beneficiary account number, the beneficiary's name, and the beneficiary address to Chase when processing the wire and that, although the beneficiary's name and address were both accurate, the beneficiary account number identified in the Wire Instructions was not an accurate account number for Pentalon. *Id.* ¶¶ 48–49.

Pentalon immediately notified Chase of the fraud and sought its assistance in obtaining control of the 0213 Account. *Id.* ¶ 54. Despite making efforts to do so, however, Pentalon could not return the wire, obtain any bank statements or information on the 0213 Account, or instruct Chase regarding the 0213 Account opened without its permission. *Id.* ¶ 51. Chase responded to recall requests by stating that it was waiting for "its client" (the purported owner of the 0213 Account) to decide if it would authorize the return of the stolen funds. *Id.* ¶¶ 58, 61.

As it turns out, and as the FBI confirmed, the 0213 Account was fraudulent, opened shortly before the wire was sent, and was essentially drained through further suspicious transactions within twenty-four (24) hours after being opened. *Id.* ¶ 56.

Plaintiffs allege two alternative theories on information and belief. In the first alternative, Plaintiffs allege that Chase opened the 0213 Account in Pentalon's name at the request of a fraudster who presented no legitimate authority or records authorizing that fraudster to open such account. *Id.* ¶ 33. In the second alternative, Plaintiffs allege that Chase allowed a fraudster to access the 0213 Account and use it to receive a transfer designated for Pentalon

when Pentalon was not the named owner or beneficiary of the 0213 Account. *Id.* ¶ 34. Plaintiffs do not affirmatively allege that the 0213 Account was in Pentalon's name or in the name of some other person or entity.

## PROCEDURAL HISTORY

This case was initiated by summons and complaint filed in New York State Supreme Court, New York County, Commercial Division on August 7, 2025. Dkt. No. 1-1. The Complaint contains four claims for relief: (1) Count I alleges aiding and abetting conversion against Chase and John Doe Chase Employees #1-#10, *id.* ¶¶ 63–68; (2) Count II alleges aiding and abetting fraud against Chase and John Doe Chase Employees #1-#10, *id.* ¶¶ 69–74; (3) Count III seeks a declaratory judgment against Chase for violation of UCC § 4A-207(c)(2),[3] *id.* ¶¶ 75–79; and (4) Count IV alleges a violation of UCC § 4A-207(c)(2)[4] against Wells Fargo, *id.* ¶¶ 80–88.

---

[3] There are several ambiguities in Plaintiffs' UCC claims. First, Plaintiffs do not specify in the Complaint under which state's version of the UCC they bring claims. Compl. ¶¶ 77–90. However, both Chase and Plaintiffs treat Plaintiffs' claims as arising under NY UCC §4-A-207 in their briefs. *See* Dkt. No. 13 at 14–20; Dkt. No. 21 at 18–20; Dkt. No. 25 at 9–10. Thus, the Court will treat Plaintiffs' UCC claims as arising under New York law. *See Smart Recovery Techs. LLC v. Supplies Plus MI LLC*, 2026 WL 787788, at *14 (S.D.N.Y. Mar. 20, 2026) ("Under New York law, where '[t]he parties' briefs assume' that a certain body of law controls, 'such implied consent is sufficient to establish choice of law.'" (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000))). Second, in the Complaint, Plaintiffs bring a claim against Chase under UCC § 4A-207(c)(2), the text of which maps onto NY UCC §4-A-207(3)(b). Compl. ¶¶ 77–81. However, in their opposition brief, Plaintiffs argue that the language of "NY UCC § 4-A-207(b)(1)" entitles them to relief. Dkt. No. 21 at 18. The language cited by Plaintiffs comes from NY UCC § 4-A-207(2), which maps onto the text of UCC § 4-A-207(b). Because both Plaintiffs and Chase treat Plaintiffs' claim as arising under NY UCC § 4-A-207(2), the Court will do so as well. *See* Dkt. No. 13 at 18–20; Dkt. No. 21 at 18; Dkt. No. 25 at 9–10.

[4] Wells Fargo interprets Plaintiffs' UCC claim as arising under Utah Code § 70A-4a-207. Dkt. No. 13 at 8–11. However, the language of Utah Code § 70A-4a-207(5) is identical to that of UCC § 4A-207(c)(2) and NY UCC § 4-A-207(3)(b). Indeed, Wells Fargo cites several cases interpreting the NY UCC in its brief, Dkt. No. 18 at 8, and its arguments against liability under the Utah UCC apply fully to the NY UCC. *See Monreal v. Fleet Bank*, 735 N.E.2d 880, 883 (N.Y. 2000) ("One of the Uniform Commercial Code's basic purposes is to make uniform the

With the consent of Wells Fargo, Chase removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, invoking diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1.

On November 12, 2025, Defendants filed their respective motions to dismiss. Dkt. Nos. 12, 15. Chase accompanied its motion to dismiss with a memorandum of law in support of the motion and the declaration of Sylvia E. Simson. Dkt. Nos. 13–14. Wells Fargo accompanied its motion to dismiss with a memorandum of law in support of the motion and the declarations of Erica D. Cook and Bryan D. Leinbach. Dkt. Nos. 16–18.

On December 15, 2025, Plaintiffs filed memoranda of law in opposition to the respective motions to dismiss filed by Chase and Wells Fargo. Dkt. Nos. 21, 22. On January 22, 2026, Chase and Wells Fargo each filed reply memoranda of law in further support of their respective motions to dismiss. Dkt. Nos. 25, 26.

The Court denied Defendants' motion for a stay of discovery, Dkt. No. 34, and discovery is proceeding in this action pursuant to a protective order, Dkt. No. 37.

## LEGAL STANDARD

### I. Standards for Dismissal Under Fed. R. Civ. P. 12(b)(6) and 9(b)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether

law among the various jurisdictions."). Therefore, the Court treats 218 Broadway's claim against Wells Fargo as arising under NY UCC § 4-A-207(3).

"[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

In addition, claims for fraud must be pled with particularity to satisfy the heightened pleading requirements of Rule 9(b). Particularity "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiffs may raise this inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

## II. Consideration of Documents Integral to the Complaint or Incorporated by Reference

In connection with its motion to dismiss, Chase has submitted and asked the Court to consider the following: (1) a "Business Signature Card," Dkt. No. 14-1; and (2) wire transfer

details, Dkt. No. 14-2. The Business Signature Card is for the 0213 Account and was signed on December 8, 2018, and contains the account title "Theodore Kampenga III DBA Santa Clarita Air Conditioning and Heating." Dkt. No. 14-1. The wire transfer details describe the credit party as Theodore Kampenga III DBA Santa Clarita Air Conditioning and H. Dkt. No. 14-2.

Wells Fargo has provided (1) 218 Broadway's "Outgoing Wire Transfer Request," Dkt. No. 16-1; (2) 218 Broadway's "Business Account Application," Dkt. No. 16-2; and (3) Wells Fargo's "Deposit Account Agreement," Dkt. No. 16-3. The Outgoing Wire Transfer Request is dated December 14, 2023, with an originator name of "J Derek Allen" and beneficiary information for Pentalon Construction with an account number ending in 0213. Dkt. No. 16-1 at 2.[5] The signature line contains the originator's agreement to the information in the Outgoing Wire Transfer Request and to the terms and conditions of the Request, including that Wells Fargo was authorized to rely on the information in the Request in making the requested funds transfer. *Id.* at 3. The agreement states, in relevant part:

> If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary.

*Id.* at 4. The Deposit Account Agreement governs Wells Fargo and 218 Broadway's contractual relationship and contains a similar provision:

> If an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we'll rely on the beneficiary account number even if the account number identifies a party different from the named recipient.

[5] Citations to this docket entry use ECF pagination.

Dkt. No. 16-3 at 19.[6] The Business Account Application, which was signed by a representative of 218 Broadway, indicates 218 Broadway's agreement to be bound by the Deposit Account Agreement. Dkt. No. 16-2 at 5.[7]

Plaintiffs argue that the Court should disregard the two exhibits annexed to Chase's motion and the three exhibits annexed to Wells Fargo's motion. *See* Dkt. No. 21 at 21–23; Dkt. No. 22 at 8–10. The Court agrees that consideration of Chase's exhibits at the motion-to-dismiss stage would be inappropriate.

Two separate rules permit the Court to consider documents that are not contained within the four corners of the complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007) (on a motion to dismiss, "courts ordinarily examine . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). Outside of these circumstances, however, "[w]hen ruling on a Rule 12(b)(6) motion, the court is generally confined to the four corners of the complaint and the allegations contained therein." *Trundle & Co. Pension Plan v. Emanuel*, 2019 WL 4735380, at *2 (S.D.N.Y. Sept. 27, 2019) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

First, under Federal Rule of Evidence 201, the Court may take judicial notice of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201, "courts have considered newspaper articles, documents publicly filed with the SEC or FINRA, documents filed with a Secretary of State, documents filed with governmental entities and available on their

---

[6] Citations to this docket entry use ECF pagination.
[7] Citations to this docket entry use ECF pagination.

official websites, and information publicly announced on certain non-governmental websites, such as a party's official website." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

None of the exhibits submitted by Defendants fall within the ambit of Rule 201. The details of Chase and Wells Fargo's internal banking records are not publicly known and cannot be "accurately and readily" verified by the Court. *See Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 2526965, at *7 (S.D.N.Y. June 3, 2014) (declining to consider exhibits that were not "public records" but rather internal documents held in confidence). Moreover, Plaintiffs' pleadings are at odds with at least a portion of the exhibits, calling into question their veracity. *See, e.g.*, Dkt. No. 21 at 22 ("[T]he Complaint pleads that the FBI determined that the Chase Account had recently been opened before the Wire, which raises all sorts of questions about the 'Business Signature Card,' which was issued years before the Wire.").

Second, relying on Federal Rule of Civil Procedure 10(c), the Second Circuit has long held that a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," and that a court may consider documents incorporated in a complaint by reference on a 12(b)(6) motion without converting it to a Rule 56 motion for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) ("statements or documents incorporated in [the complaint] by reference" properly considered on motion to dismiss). Those same principles permit the Court to consider on a 12(b)(6) motion to dismiss documents upon which the plaintiff relies in bringing suit, which are integral to the complaint, and as to which they had notice. *Cortec*, 949 F.2d at 48. For this rule to apply, the

plaintiff must have relied on the document in drafting the complaint; notice and possession are not enough. *Nicosia*, 834 F.3d at 231. Generally, this "occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Id.* (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). Finally, even where a document is considered "integral" to a complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

The Court does not have the power to consider Chase's exhibits under Rule 10(c). Plaintiffs have not referred to or relied on Chase's "Business Signature Card" or wire transfer details in their pleadings; indeed, given that these are internal bank documents, one of which relates to an account owned by neither Plaintiff, it is dubious that Plaintiffs had any notice—much less possession—of the documents. Even if these documents could be considered integral to the Complaint, Plaintiffs did not have possession or notice of the documents prior to drafting the Complaint.

The same cannot be said about Wells Fargo's exhibits, however. While it is true that Plaintiffs do not make explicit reference to the Outgoing Wire Transfer Request, Business Account Application, or Deposit Account Agreement in the Complaint, Wells Fargo's exhibits are "integral" to the Complaint since "the transactions at issue . . . would not have occurred but for Plaintiff's execution of those documents." *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 173 (E.D.N.Y. 2024) (finding "Wire Transfer Outgoing Requests" and "Wire Transfer Agreements" to be integral to the complaint despite the complaint's lack of reference to

them); *see also McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 306–07 (E.D.N.Y. 2025) (finding "Deposit Account Agreements" and "Wire Transfer Agreement Forms" to be integral to the complaint); *Miceli Contracting Co., Inc. v. JPMorgan Chase Bank N.A.*, 2025 WL 3239668, at *5 (E.D.N.Y. Aug. 19, 2025) (same). In other words, Wells Fargo's exhibits are contracts which define 218 Broadway and Wells Fargo's obligations—as will be discussed *infra*—in a manner dispositive of this case. *See Nicosia*, 834 F.3d at 231. Moreover, no dispute exists regarding the authenticity or accuracy of the exhibits. While Plaintiffs claim that they "have no way of knowing whether these documents are truly complete, accurate copies of Wells Fargo's purported corporate documents," Plaintiffs have not actually called into question any element of the documents as being inaccurate. Dkt. No. 22 at 10.

The Court will therefore consider the exhibits annexed to Wells Fargo's motion in deciding the motions to dismiss.

**DISCUSSION**

Plaintiffs bring four claims—three against Chase and one against Wells Fargo. Plaintiffs claim that Chase is liable for (1) aiding and abetting conversion; (2) aiding and abetting fraud; and (3) violating NY UCC § 4A-207(2). Compl. ¶¶ 65–81. 218 Broadway claims that Wells Fargo is liable for violating NY UCC § 4A-207(3). *Id.* ¶¶ 82–90.

No issues of standing must be addressed by the Court. Wells Fargo initially challenged Pentalon's standing to bring claims against it, Dkt. No. 18 at 12–13, but Plaintiffs have since clarified that only 218 Broadway brings suit under NY UCC § 4A-207(3) against Wells Fargo, Dkt. No. 22 at 12.

**I. Aiding and Abetting Fraud**

"To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that

the defendant provided substantial assistance to advance the fraud's commission.'" *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (alteration accepted) (quoting *Lerner*, 459 F.3d at 292). "The particularity requirements of Federal Rule of Civil Procedure 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 383 (S.D.N.Y. 2010); *see Green Star Energy Sols., LLC v. Edison Props., LLC*, 2022 WL 16540835, at *14 (S.D.N.Y. Oct. 28, 2022).

Plaintiffs' claim fails on two grounds: first, the failure to establish Chase's actual knowledge of the underlying fraud; and second, the failure to show that Chase substantially assisted the execution of the underlying fraud.

### A. Actual Knowledge

Assuming *arguendo* that Plaintiffs have adequately stated a claim for fraud, Plaintiffs have not sufficiently alleged Chase's knowledge of the fraud with the required specificity. "While actual knowledge of the underlying fraud may be averred generally under Rule 9(b), the plaintiff must accompany the general allegation with allegations of specific 'facts giving rise to a strong inference of actual knowledge regarding the underlying fraud.'" *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 2020 WL 3961617, at *6 (S.D.N.Y. July 13, 2020) (internal quotation marks and citation omitted), *aff'd*, 842 F. App'x 705 (2d Cir. 2021) (summary order). "The requirement that a plaintiff allege 'actual knowledge' to state a claim for aiding and abetting fraud is 'a distinct requirement from the scienter required to allege the underlying fraud.'" *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (quoting *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011)).

"Actual, not constructive, knowledge is required to impose liability on an alleged aider and abettor." *Rosner v. Bank of China*, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008) (citing *Lerner*, 459 F.3d at 292–93), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) (summary order); *see*

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 n.279 (S.D.N.Y. 2006) (collecting cases); *Berman v. Morgan Keegan & Co., Inc.*, 2011 WL 1002683, at *10 (S.D.N.Y. Mar. 14, 2011) ("Mere allegations of constructive knowledge or recklessness are insufficient to satisfy the knowledge requirement." (internal quotation marks omitted)), *aff'd*, 455 F. App'x 92 (2d Cir. 2012) (summary order). Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (quoting Black's Law Dictionary (8th ed. 2004)).

Plaintiffs allege that if Chase followed "federal law," "the industry standard of care in managing large-dollar commercial accounts," and internal "Chase policies," it would have caught and had actual knowledge of the underlying fraud. Compl. ¶¶ 33–34. Under their first alternative theory of liability, Plaintiffs claim that had Chase followed proper procedure, it would have known that the 0213 Account was fraudulent since Pentalon had a "prior banking relationship" with Chase and knew Pentalon's "unique identifiers." Dkt. No. 21 at 12. Similarly, under their second theory, Plaintiffs allege that had Chase followed procedure, it would have noticed the mismatch in names between the wire transfer's intended beneficiary and the owner of the 0213 Account. *Id.*

Plaintiffs do not identify the federal law, industry standard of care, or Chase policies that would have put Chase on notice of the alleged fraud. Their pleading is defective for that reason alone. *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 628 (2d Cir. 2020) (summary order) ("Plaintiffs' speculation that JPMorgan must have known about the scheme because it had in place unspecified anti-money-laundering controls is similarly insufficient to support a strong inference of actual knowledge here."); *cf. Berman*, 2011 WL 1002683, at *10 ("'Know Your

Customer Rules' and other various stock exchange rules and monitoring requirements . . . at most speak to whether [the defendant] should have known of the fraud; they do not reflect actual knowledge of fraud.").

Plaintiffs do not plead facts establishing strong circumstantial evidence of conscious misbehavior or recklessness. They do not affirmatively plead that the 0213 Account was in the name of Pentalon or what procedures there were in place that Chase should be presumed to have followed that would have alerted it to the fraudster. Plaintiffs also do not plead facts that would establish that Chase knew that a wire directed to the 0213 Account should be deposited in an account other than the 0213 Account, even if the name of the beneficiary did not match the name on the 0213 Account. The standard practice as reflected in the UCC is to match only account numbers. UCC § 4-A-207 cmt. 2. Nor do Plaintiffs plead facts suggesting a motive for why Chase, a major financial institution built upon consumer trust, would knowingly allow its accounts to be used for fraud. *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 517 (S.D.N.Y. 2011) ("Actual knowledge may also be implied from a strong inference of fraudulent intent, and a motive is probative of that inference.") (internal quotation marks and citation omitted).

Even if Chase identified some "red flags" but negligently failed to act on its suspicions, that would not permit a plausible inference of knowledge. *See Lerner*, 459 F.3d at 294 (finding that although several banks' knowledge of "red flags", i.e., overdrawn accounts, dishonored checks, and transfers of money to a personal account, "may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge of . . . theft"); *Rosner*, 2008 WL 5416380, at *6 ("New York courts overwhelmingly recognize that a plaintiff does not satisfy Rule 9(b) by alleging a bank's

actual knowledge of a fraud based on allegations of the bank's suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence.") (collecting cases); *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("[E]ven alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'"). Pleadings which allege that Chase *should have* known about the underlying fraud are not the same as pleadings which allege that Chase did, in fact, know about the fraud. *See Jacobs v. Barclays Bank PLC*, 2025 WL 41644, at *2 (S.D.N.Y. Jan. 7, 2025), *aff'd*, 2025 WL 3537338 (2d Cir. Dec. 10, 2025) (summary order); *Heinert v. Bank of Am., N.A.*, 410 F. Supp. 3d 544, 549–50 (W.D.N.Y. 2019), *aff'd*, 835 F. App'x 627 (2d Cir. 2020) (summary order); *Huang v. Hong Kong & Shanghai Banking Corp. LTD*, 2022 WL 4123879, at *5 (S.D.N.Y. Sept. 9, 2022).

**B. Substantial Assistance**

Moreover, even if Plaintiffs could establish Chase's actual knowledge of the underlying fraud, Plaintiffs' claim fails for the independent reason that Plaintiffs have failed to adequately allege that Chase provided "substantial assistance" to the fraudster.

"To plead substantial assistance, a plaintiff generally must plead facts from which the Court can infer that (1) the defendant affirmatively assisted, helped conceal, or failed to act when required to enable the fraud to proceed; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" *Berdeaux*, 561 F. Supp. 3d at 416 (quoting *Rosner*, 2008 WL 5416380, at *12). "'But-for' causation is insufficient; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct." *Id.* (quoting *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)). "Inaction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in

conscious and reckless violation of a duty to act.'" *Rosner*, 2008 WL 5416380, at *5 (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983)).

Banks regularly provide "[r]outine banking services, including opening accounts, executing wire transfers, and processing checks" to their customers. *Zamora v. JPMorgan Chase Bank, N.A.*, 2015 WL 4653234, at *3 (S.D.N.Y. July 31, 2015). Unless the bank has violated a duty to act or engages in activities intentionally designed to facilitate the fraud, the provision of such services does not constitute "substantial assistance." *Id.* (finding defendant did not substantially assist by failing to flag accounts opened "without a social security or taxpayer identification number"). Indeed, "[i]t is well-established that 'the mere fact that participants in a fraudulent scheme use accounts at a financial institution to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance.'" *Berman v. Morgan Keegan & Co., Inc.*, 455 F. App'x 92, 96 (2d Cir. 2012) (summary order) (quoting *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 330 (S.D.N.Y. 2010)); *see also Berdeaux*, 561 F. Supp. 3d at 416 ("As a matter of firmly established Second Circuit precedent, such conduct is patently insufficient to plead substantial assistance necessary to support a claim for aiding and abetting fraud.") (collecting cases).

In *Jacobs v. Barclays Bank PLC*, a court in this District dismissed a claim of aiding and abetting fraud against Barclays after the plaintiff, Joshua Jacobs, was fraudulently induced by a third party to wire money into two Barclays bank accounts. 2025 WL 41644, at *1. Like Plaintiffs in the instant case, Jacobs alleged that Barclays aided and abetted the fraud by: "(1) failing to confirm the identities of [defendant account] holders; (2) failing to halt, freeze, or reverse the fraudulent wire transfers; and (3) refusing [plaintiff's] request for information about the [fraudulent accounts]." *Id.* at *2. Judge Abrams concluded that since Jacobs had failed to allege that Barclays' services to the fraudsters "differed from those provided to other customers,"

that is, they were "routine banking transactions," Barclays' actions did not rise to the level of "substantial assistance." *Id.* at *3; *see also Huang*, 2022 WL 4123879, at *5 ("The caselaw is clear that approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance." (quoting *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010))).

*Jacobs* is on all fours with this case. Plaintiffs have not alleged that Chase provided the fraudster with any assistance beyond routine banking services. Consequently, Plaintiffs' aiding and abetting fraud claim fails as a matter of law.

## II. Aiding and Abetting Conversion

Plaintiffs' aiding and abetting conversion claim against Chase fails on the same grounds as their aiding and abetting fraud claim. "Under New York law, the elements of . . . aiding and abetting a conversion[] and aiding and abetting a fraud are substantially similar. The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61–62 (2d Cir. 2012) (summary order) (citing *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009)). Plaintiffs have failed to plead sufficient facts supporting an inference that Chase had actual knowledge of the underlying conversion or substantially assisted the conversion.

Plaintiffs' allegations could be understood to sound in conversion itself. Plaintiffs do not allege that Chase merely supported the fraudster's conversion of the funds. Instead, Plaintiffs claim that "Chase exercised dominion and control over the Wire" by (1) refusing to take steps to return the funds transfer after being notified of the fraud by Plaintiffs and Wells Fargo, and (2) allowing the wire to be processed despite the mismatch in the intended beneficiary and account owner. Dkt. No. 21 at 17. Even construing the Complaint to allege a claim against Chase as

principal rather than as aider and abettor, it fails to state a claim for relief. "Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (quoting *Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Texas*, 660 N.E.2d 1121, 1126 (N.Y. 1995)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997). "To plausibly allege a conversion claim, a plaintiff must show: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Benex LC v. First Data Merch. Servs. Corp.*, 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)); *see Kim v. Lee*, 576 F. Supp. 3d 14, 33 (S.D.N.Y. 2021), *aff'd*, 2023 WL 2317248 (2d Cir. Mar. 2, 2023) (summary order). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (internal citations omitted).

Defendants argue that Plaintiffs cannot make out an underlying claim of conversion for two reasons. *See* Dkt. No. 13 at 12–14; Dkt. No. 25 at 8–9. First, that the funds wired to Chase are not "specific and identifiable property," Dkt. No. 13 at 13–14, and second, that Chase did not exercise "unauthorized dominion" over the wire, Dkt. No. 25 at 9.

Plaintiffs' funds are "specific and identifiable" property. Chase is correct in stating that funds deposited with *one's own* bank are not specific and identifiable. This is because customers do not retain title over money deposited with a bank; instead, "the relationship between a bank

and a depositor is the strictly contractual one of debtor and creditor." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000); *see also Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 560 (2d Cir. 1976) ("Money deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action."). Consequently, "when the bank has misused the depositor's money, the depositor's remedy lies in contract—not tort." *Newbro v. Freed*, 409 F. Supp. 2d 386, 395–96 (S.D.N.Y. 2006) (citing *Tevdorachvili*, 103 F. Supp. 2d at 643), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007) (summary order). But no such contractual relationship exists between 218 Broadway and Chase. And a specific sum of money wired to a specific bank account by a non-customer is "specifically identifiable" property for which a claim of conversion can be brought. *See*, *e.g.*, *Constrafor, Inc. v. Fed. Deposit Ins. Corp.*, 2025 WL 2636588, at *5 (S.D.N.Y. Sept. 12, 2025); *ADP Inv. Commc'n Servs., Inc. v. In House Att'y Servs., Inc.*, 390 F. Supp. 2d 212, 224–25 (E.D.N.Y. 2005); *Newbro*, 409 F. Supp. 2d at 397.

Plaintiffs' conversion claims fail, however, because Chase did not exercise "unauthorized dominion" over Plaintiffs' funds. Where the defendant's exercise of dominion is authorized, when it follows the plaintiff's instructions, no claim of conversion can lie. *See, e.g.*, *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 371 (S.D.N.Y. 2015) ("According to the Complaint, [plaintiff's] employee authorized the transfer of cargo . . . . Therefore, the Complaint fails to adequately plead a claim for conversion."); *see also Nat'l Steamship Co. v. Sheahan*, 25 N.E. 858, 859 (N.Y. 1890) (affirming dismissal of action for replevin of allegedly converted steamship tickets "because the defendant neither unlawfully obtained possession of the tickets nor wrongfully disposed of them"). A party temporarily

entrusted with property can follow its owner's instructions to deliver that property to a third party without assuming liability in tort. *See Dynamic Worldwide Logistics*, 77 F. Supp. 3d at 371 ("Second, when possession of the property by a defendant was initially lawful, an action for conversion only arises if plaintiff made demands for return of the property or a defendant wrongfully transferred or dispossessed of it."). Chase was fully authorized by 218 Broadway to transfer the wire to the 0213 Account. Compl. ¶¶ 37–38. 218 Broadway only sought to repossess the funds after the money had already been transferred to the 0213 Account. *Id.* ¶ 58. At that point, the owner of the 0213 Account—whether it was Pentalon or not—was entitled to the money in the 0213 Account absent a legal showing that the money was acquired unlawfully, and in the absence of such a showing, 218 Broadway had no claim to the money. Thus, it cannot be said that Chase exercised unauthorized dominion over the funds by refusing to return them to 218 Broadway.

## III. Violation of NY UCC § 4-A-207(2) by Chase

Plaintiffs also seek a declaratory judgment against Chase under NY UCC § 4-A-207(2).

NY UCC § 4-A-207(2) addresses the circumstance in which a payment beneficiary's bank receives a payment order with an inconsistent account owner and account identification number. Specifically, it states:

> (2) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (a) Except as otherwise provided in subsection (3), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to

> receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

NY UCC § 4-A-207(2).

The drafters of § 4-A-207(2) specifically contemplated the fact that a "very large percentage of payment orders" issued by banks are processed by "automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account." *Id.* § 4-A-207 cmt. 2. These orders are often processed "without human reading," and with intended beneficiary names often playing "no part in the process of payment," even if names are collected. *Id.* Consequently, § 4-A-207(2) was drafted to allocate risk when mismatches in the intended beneficiary and account number—whether due to error or fraud—inevitably arose. *See* 3 White, Summers, & Hillman, Uniform Commercial Code § 24:6 (6th ed.).

The goal of § 4-A-207(2) was to clarify the responsibilities of banks in verifying the details of payment orders. *Id.* (comparing *Sec. Fund Servs., Inc. v. Am. Nat'l Bank and Tr. Co. of Chicago*, 542 F. Supp. 323 (N.D. Ill. 1982) with *Bradford Tr. Co. of Boston v. Texas Am. Bank-Houston*, 790 F.2d 407 (5th Cir. 1986)). Section 4-A-207(2)(a) made clear that banks had no duty to discover and reject mismatched orders—thereby allowing society to reap the benefits of automated payments, namely "speedy, inexpensive, and not labor intensive" fund transfers. 3 White, Summers, & Hillman, Uniform Commercial Code § 24:6 (6th ed.); *see also* NY UCC § 4-A-207 cmt. 2 (automated transfers allow "substantial economies of operation" and lowered "possibility of clerical error"). Only when a bank was already aware of a mismatch does it have a duty to stop a funds transfer, NY UCC § 4-A-207(2)(b), thus imposing no additional duty to discover mismatched information and imposing liability on the party which knowingly could

have prevented the mismatched payment. *See* 3 White, Summers, & Hillman, Uniform Commercial Code § 24:6 (6th ed.).

Plaintiffs have not alleged a violation of § 4-A-207(2) under either of their theories. Plaintiffs' first alternative theory of liability fails to state a claim under § 4-A-207(2). To refresh, Plaintiffs allege that Chase allowed the fraudster to open the 0213 Account under Pentalon's name. But if the fraudster had been able to open an account at Chase in Pentalon's name, the trigger for § 4-A-207(2)—a mismatch in intended beneficiary and account owner name—would be absent. Plaintiffs may or may not be able to state a claim on a different theory. They cannot state a claim under § 4-A-207(2).

Plaintiffs' second alternative theory passes this initial checkpoint but flounders on other grounds. Plaintiffs' second theory is that Chase allowed the wire transfer to be executed despite a mismatch in intended beneficiary and account owner names. To begin, § 4-A-207(2)(a) permits a bank to "rely on the [account] number as the proper identification of the beneficiary of the order," *assuming* the bank "does not know that the name and [account] number refer to different persons." NY UCC § 4-A-207(2)(a). As discussed above, Plaintiffs have not sufficiently alleged that Chase had "actual knowledge" of the name mismatch at the time it completed the wire transfer. *See Frankel-Ross v. Congregation OHR Hatalmud*, 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016); *see also* UCC § 4-A-207 cmt. 2 ("'Knowledge' and 'knows' are defined . . . to mean actual knowledge."). Section 4-A-207 does not presume a bank had knowledge of a mismatch merely because a mismatched detail appeared on a process payment order—otherwise the distinction between § 4-A-207(2)(a) and § 4-A-207(2)(b) would be superfluous, imposing liability on banks wherever a plaintiff could show a mismatched

transfer was approved. *See* 3 White, Summers, & Hillman, Uniform Commercial Code § 24:6 (6th ed.).

Moreover, Plaintiffs' § 4-A-207(2) claim independently fails due to the lack of privity between Plaintiffs and Chase. UCC § 4-A-402 "'provides the remedial scheme' for violations of Sec. 4-A-207." *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) (quoting *Frankel-Ross*, 2016 WL 4939074, at *3); UCC § 4-A-207 cmt. 2 (describing payment obligations arising from a misdescription as being governed by § 4-A-402). Section 4-A-202 "incorporates a 'privity' requirement so that the remedy applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Wellton*, 612 F. Supp. 3d at 364 (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998)) (alterations accepted). As the beneficiary bank, Chase was not party to the payment order (which occurred between 218 Broadway and Wells Fargo). Likewise, although Pentalon was a customer of Chase, it too was not party to the payment order between 218 Broadway and Wells Fargo. Therefore, neither Plaintiff can make out a claim under § 4-A-207(2) against Chase or Wells Fargo.

**IV. Violation of NY UCC § 4-A-207(3) by Wells Fargo**

218 Broadway also seeks the refund of 218 Broadway's wire transfer from Wells Fargo under NY UCC § 4-A-207(3).

Again, 218 Broadway's first alternative theory of liability has no leg to stand on under § 4-A-207(2) since it assumes no mismatch in intended beneficiary and account holder names.

218 Broadway's second theory also fails, but for different reasons. 218 Broadway brings its claim under § 4-A-207(3), which states that:

> (3) If (i) a payment order described in subsection (2) is accepted, (ii) the originator's payment order described the beneficiary inconsistently by name and number, and

> (iii) the beneficiary's bank pays the person identified by number as permitted by paragraph (a) of subsection (2), the following rules apply:
>
> (a) If the originator is a bank, the originator is obliged to pay its order.
>
> (b) If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary. Proof of notice may be made by any admissible evidence. The originator's bank satisfies the burden of proof if it proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates.

NY UCC § 4-A-207(3).

The threshold conditions of § 4-A-207(3) are met. The pleadings allege that the payment order received by Chase identified the beneficiary by name and account number, and that the intended beneficiary and account owner had different names. Compl. ¶¶ 34–38. The "originator" of the payment order, 218 Broadway, is not a bank, and has at this stage sufficiently plead that the person controlling the 0213 Account was not the person entitled to receive money from 218 Broadway. *Id.* ¶¶ 40–46, 56. Therefore, 218 Broadway is not obligated to pay *unless* Wells Fargo provided 218 Broadway with notice that the payment order might be made by Chase based on the provided account number despite a mismatch in name (prior to the payment being ordered).

However, Wells Fargo did provide notice to 218 Broadway that payment might be made on the account number provided by 218 Broadway. Wells Fargo's exhibit containing its Deposit Account Agreement provides, in relevant part:

> If an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we'll rely on the beneficiary account number even if the account number identifies a party different from the named recipient.

Dkt. No. 16-3 at 19. The Business Account Application, which was signed by a representative of 218 Broadway, indicates 218 Broadway's agreement to be bound by the Deposit Account Agreement. Dkt. No. 16-2 at 5. The exhibit containing the Outgoing Wire Transfer Request also includes an appended "Wire Transfer Agreement," which states:

> If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary.

Dkt. No. 16-1 at 4. The Outgoing Wire Transfer Request was signed by a representative of 218 Broadway. *Id.* at 3. 218 Broadway does not dispute the accuracy or authenticity of any of these documents, which its representative reviewed and signed.

218 Broadway's allegation that Wells Fargo, through its "general advertising" and "account representative," represented that it matched the "name, address, and account number" of 218 Broadway's payment order to the beneficiary account, is inapposite. Compl. ¶ 37. The plain text of § 4-A-207(3)(b) is clear, stating: "The originator's bank satisfies the burden of proof if it proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates." NY UCC § 4-A-207(3)(b). The factual record makes clear that Wells Fargo has met this burden, and therefore, 218 Broadway is not entitled to relief under § 4-A-207(3)(b).

**CONCLUSION**

Plaintiffs have lost a substantial sum of money to fraud. However, as a matter of law, Plaintiffs cannot sustain their claims against Defendants.

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiffs' Complaint is DISMISSED with prejudice.[8]

---

[8] Plaintiffs did not seek leave to file an amended complaint, nor do they indicate what allegations

The Clerk of Court is respectfully directed to close Dkt. Nos. 12, 15, and 38 and to close the case.

SO ORDERED.

Dated: August 14, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

they would add to an amended complaint to cure its deficiencies. *See Cesiro v. Rite Aid of New York*, 2022 WL 392907, at *6 (S.D.N.Y. Feb. 9, 2022) ("[W]here a plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend *sua sponte*."). Moreover, even if new allegations were added that would allow an amended complaint to survive the motion-to-dismiss phase, the exhibits provided by Chase, although not considered by the Court at this stage in the litigation, cast doubt on Chase's actual knowledge and substantial assistance of fraud and conversion and Chase's actual knowledge of the mismatched account details—suggesting instead that the wire transfer was a typical, automated transfer made on the basis of account number and not account owner name. *See* Dkt. Nos. 14-1, 14-2.